661 A.2d 320

WHS REALTY COMPANY, A NEW JERSEY GENERAL PARTNER-SHIP, PLAINTIFF–RESPONDENT, v. THE TOWN OF MORRIS-TOWN; MAYOR AND TOWN COUNCIL OF THE TOWN OF MORRISTOWN; TOWN OF MORRISTOWN HEALTH DEPART-MENT; TOWN OF MORRISTOWN PUBLIC WORKS DEPART-MENT, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 8, 1995—Decided July 10, 1995.

Before PETRELLA, HAVEY and BROCHIN, JJ.

*Herbert A. Vogel,* argued the cause for appellants (*Vogel, Chait, Schwartz & Collins,* attorneys; *Mr. Vogel* and *Laura J. Lande* on the brief).

*Gary D. Gordon,* argued the cause for respondent (*Feinstein, Raiss & Kelin,* attorneys; *Mr. Gordon* on the brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

By leave granted, defendants Township of Morristown, its Mayor and Town Council and its Health and Public Works Departments, appeal from a partial summary judgment declaring a portion of the Township's garbage collection ordinance unconstitutional. We affirm.

The Township's ordinance provides for the collection of garbage from single-family residences, apartment complexes having less than four units and any housing complex consisting of four or more dwelling units in which the majority of such units are separately owned in fee or as condominiums. Plaintiff's apartment complex, consisting of 140 units, does not fall within that classification and therefore does not receive garbage collection service.

In its complaint, plaintiff claims that the Township's ordinance violates due process and equal protection guaranteed by the New Jersey and United States Constitutions. It demands garbage collection service equal to service provided to all other residents within the Township and also makes a claim under 42 *U.S.C.A.* § 1983 for compensatory damages, attorneys' fees, interest and cost of suit.

In granting partial summary judgment to plaintiff, Judge Stanton reasoned that there was no rational basis for the Township to make a distinction between those who live in single-family units, condominiums, and apartment complexes having less than four

units, and those who live in an apartment complex having four or more units. He concluded that the classification discriminated against apartment dwellers in a way that "is unacceptable under our Constitution," and found that once the Township elected to provide garbage collection service, paid for from the general revenue of the Township, exclusion of a class of apartment-unit dwellers from such a service constituted invidious discrimination. The judge elaborated:

[W]hen we deal with suburban communities and the vast number of our citizens in this state live in suburban communities, we have the risk of having an invidious social economic class system of the worst kind.

And the reality is that the more affluent people in residential communities, suburban residential communities, live in single-family residences and . in condominium complexes. And the less advantaged economically live in rental apartments, and those less advantaged people have smaller political clout and lesser ability to assert their rights. They are at risk, and it is precisely those people who are not protected by legislation such as this.

The judge was also of the view that apartment complex owners were being discriminated against for a different reason:

There is also another class of people who are at risk, and that is to say the owners of apartment complexes. Now they are not economically disadvantaged. On the contrary, I would assume that most of them are economically advantaged. But they—they are targets for a kind of cheap populism that puts them at risk. And I think that the risk here of invidious treatment, either because someone doesn't like a relatively small class of property owners, or because someone doesn't care about a relatively small and unimportant class, but a larger class, of rental apartment dwellers, the risk that those people will be discriminated against is real and—and schemes like this, I think, are—are unfortunately an embodiment of that reality.

■ Equal protection analysis employs different tiers of review: strict scrutiny when legislation involves a fundamental right or suspect class; intermediate scrutiny when an act involves a semi-suspect class; and minimal rational-basis scrutiny in all other cases. *Drew Assocs. of N.J., L.P. v. Travisano*, 122 *N.J.* 249, 258, 584 *A.*2d 807 (1991); *Property Owners & Managers Ass'n v. Town Council of Parsippany–Troy Hills*, 264 *N.J.Super.* 538, 544, 624 *A.*2d 1381 (App.Div.1993). Under the rational basis test, the legislation " 'need be only rationally related to a legitimate state interest to satisfy federal equal protection requirements.' " *Ibid.*

(quoting *Brown v. City of Newark,* 113 *N.J.* 565, 573, 552 *A.*2d 125 (1989)). The same type of analysis has been adopted essentially · respecting an equal protection analysis under Article I, paragraph 1, of the New Jersey Constitution. *Property Owners & Managers Ass'n,* 264 *N.J.Super.* at 544, 624 *A.*2d 1381.

■ Here, Judge Stanton properly applied the lowest standard of review, the rational-basis scrutiny, since the Township's ordinance does not implicate a suspect or semi-suspect class, or a fundamental right. *See Pleasure Bay Apartments v. City of Long Branch,* 66 *N.J.* 79, 91, 328 *A.*2d 593 (1974); *New Jersey State League of Municipalities v. State,* 257 *N.J.Super.* 509, 518, 608 *A.*2d 965 (App.Div.1992), *certif. dismissed,* 133 *N.J.* 423, 627 *A.*2d 1132, *appeal dismissed,* 133 *N.J.* 419, 627 *A.*2d 1129 (1993).

■ Municipal ordinances, like all legislation, are entitled to a strong presumption of constitutionality. *Pleasure Bay Apartments,* 66 *N.J.* at 93–94, 328 *A.*2d 593. The challenger has the burden to refute all possible rational bases for the classification in the ordinance providing for different treatment, whether or not the enacting body has cited those bases as reasons for the enactment. *New Jersey State League of Municipalities,* 257 *N.J.Super.* at 518, 608 *A.*2d 965. Thus, legislation must be upheld if the court can conceive of any reason to justify the classification, even if the classification is fairly debatable. *Id.* at 518–19, 608 *A.*2d 965.

■ Neither statutory nor case law imposes a mandatory duty on a municipality to provide for municipal garbage removal. *Pleasure Bay Apartments,* 66 *N.J.* at 90, 328 *A.*2d 593. A municipality *"may* provide for the ... collection or disposal of solid waste, and *may* establish and operate a system therefor...." *N.J.S.A.* 40:66–1a (emphasis added).

In *Pleasure Bay Apartments,* our Supreme Court upheld municipal regulations limiting garbage collection service to curbside collection. 66 *N.J.* at 95, 328 *A.*2d 593. The Court rejected the claim by owners of garden apartment complexes that the munici-

pality's refusal to remove garbage from "dumpsters" situate within the apartment complexes constituted invidious discrimination. *Id.* at 95–96, 328 *A.*2d 593. The Court observed that the statutory power under *N.J.S.A.* 40:66–1 was discretionary, not mandatory, and that:

> No case has ever held that a municipality electing to furnish garbage removal services at municipal expense must provide means and facilities which are all inclusive and will insure collection of all garbage and refuse produced in the municipality. All cases which have dealt with the issue have ruled to the contrary.
> [*Pleasure Bay Apartments,* 66 *N.J.* at 90, 328 *A.*2d 593.]

The distinguishing factor in *Pleasure Bay Apartments* is that the limitation imposed requiring curbside collection, although burdensome to garden apartment complexes, was "based on real and not feigned differences in the problems inherent in collection of garbage from locations within [the garden apartment complexes], as contrasted with collections from the curbside." *Id.* at 95, 328 *A.*2d 593. The problems cited by the Court include the substantial costs incident to on-site collection and the practical difficulties associated with entry upon private roads and private property. *Id.* at 96, 328 *A.*2d 593.

In *Property Owners & Managers Ass'n,* 264 *N.J.Super.* at 546, 624 *A.*2d 1381, we upheld *N.J.S.A.* 40:66–1b, which provides that a municipality may limit service to curbside collection along public streets.[1] We held that the statute "passes constitutional muster because it does not exclude any class of residents from receiving municipal solid waste collection." 264 *N.J.Super.* at 543, 624 *A.*2d 1381. Noting the plaintiffs' argument that the statute is facially discriminatory because it does not distinguish between a "public" and "private" street, we deferred to the Legislature's classification because it is " 'better situated than courts to make policy decisions concerning public ... safety....' " *Id.* at 545, 624 *A.*2d 1381 (quoting *Brown,* 113 *N.J.* at 571, 552 *A.*2d 125). We observed that the Legislature no doubt was concerned with "safety on the private streets and cost containment for solid waste collection" and

---

[1] *N.J.S.A.* 40·66–1b codified the holding in *Pleasure Bay Apartments.*

thus "the factual distinction between private and public streets has a real and substantial relationship to a legitimate governmental objective on a statewide basis." *Property Owners & Managers Ass'n*, 264 *N.J.Super.* at 546–47, 624 *A.*2d 1381.

*Pleasure Bay Apartments* and *Property Owners & Managers Ass'n* are not helpful to defendants since both cases involve the physical impediments and additional costs associated with on-site collection of garbage as opposed to the collection at curbside. Plaintiff does not seek on-site collection of the garbage.

More to the point are our opinions in *Boulevard Apartments, Inc. v. Mayor of Lodi,* 110 *N.J.Super.* 406, 265 *A.*2d 838 (App. Div.), *certif. denied,* 57 *N.J.* 124, 270 *A.*2d 27 (1970) and *399 Lincoln Assocs. v. City of Orange Tp.,* 244 *N.J.Super.* 238, 581 *A.*2d 1364 (App.Div.1990). In *Boulevard Apartments, Inc.,* the owner of a 108 apartment-unit complex challenged Lodi's ordinance which provided for garbage collection service to residential dwellings, businesses, public buildings and public housing complexes, but excluded garden apartment housing from its coverage. 110 *N.J.Super.* at 408–09, 265 *A.*2d 838. Numerous other multi-family dwellings, ranging from two- to eight-family units, received the garbage collection service. *Id.* at 409, 265 *A.*2d 838. A rationale for the classification excluding garden apartments was the additional $75,000 to $80,000 in annual cost necessary to provide service to the over 1,400 units contained in thirty-eight garden apartments in the borough. *Ibid.*

We invalidated the Lodi ordinance, concluding that while limiting the collection of garbage to certain classifications is not forbidden, "there can be no invidious discrimination in the establishment of such classifications." *Id.* at 411, 265 *A.*2d 838. There is a denial of equal protection "unless the service is available to all persons in like circumstances upon the same terms and conditions." *Ibid.* We found no reasonable justification for the borough to classify garden-type apartment houses differently from other residential dwellings, first because the garbage produced by a one-family unit in an apartment house and a one-family dwelling

house is "substantially the same," and second because the cost of collection from family units in an apartment house where the accumulated garbage is concentrated in one spot to be picked up at the curb is "unquestionably less than the cost of collection from an equal number of family units residing in separate private dwellings." *Id.* at 412, 265 *A.*2d 838. We also rejected the notion that garden apartment houses may be treated differently on the basis that the owner of the complexes may realize a profit on his investment. *Id.* at 411, 265 *A.*2d 838. We reasoned:

> The resolution in question makes no distinction between owner-occupied dwellings and those rented for income. The evidence reveals that there are numerous rented multi-family dwellings containing from two to eight family units which are not precluded from receiving municipal garbage collection service. Moreover, the resolution on its face provides for collection from public housing projects and various places of business.
>
> [*Ibid.*]

We adopted the reasoning of *Boulevard Apartments, Inc.* in *399 Lincoln Assocs.* in striking down an ordinance providing for garbage collection service to residential dwellings, but excluding service to "residential premises that contain five dwelling units or more." 244 *N.J.Super.* at 240, 581 *A.*2d 1364. We reasoned that "[t]he volume of garbage on a per-unit basis generated by a five-family home is the same as other multi-family dwellings." *Id.* at 242, 581 *A.*2d 1364. Thus, the result of the ordinance "does not treat alike, persons situated alike." *Id.* at 245, 581 *A.*2d 1364.

> A commercial landlord who rents a one, two, three or four-family building receives free garbage collection and thus does not have to factor into his rent a cost for that service, whereas, a commercial landlord with five or more units must pay for this service and thereby factor that cost into the rents charged. Persons situated alike are not treated alike under Ordinance # 5–89, and thus it is unconstitutional.
>
> [*Ibid.*].

In our view, *Boulevard Apartments, Inc.* and *399 Lincoln Assocs.* are dispositive. We can conceive of no rational basis for differentiating between an apartment dweller living in a complex consisting of four units or more and all other residents within the community. Judge Stanton made the point eloquently:

> People are people. They live in what are to them homes. Doesn't matter whether it's a lovely single-family residence or a modest single-family residence or

a spiffy condominium or a—modest condominium or a fancy residential unit, or as would be more common, a relatively modest residential unit.

The nature of the solid waste produced by residents of condominiums, single-family units and all apartment complexes is the same. The apartment dweller in a complex with four or more units generates no more solid waste than other residents. Defendants do not claim that there are physical impediments or safety hazards relating to the curbside collection of solid waste from large apartment complexes. *See Pleasure Bay Apartments,* 66 *N.J.* at 96, 328 *A.*2d 593. Indeed, Judge Stanton left it to the municipality to implement a collection plan in a practical but "user friendly way." Further, nothing in the record suggests, nor have defendants argued, that "[a]dministrative convenience" justifies the classification. *399 Lincoln Assocs.,* 244 *N.J.Super.* at 244, 581 *A.*2d 1364.

Finally, the fact that the owners of apartment complexes with four or more units may realize a profit from their investment is not a rational basis for the classification. *Boulevard Apartments, Inc.,* 110 *N.J.Super.* at 411, 265 *A.*2d 838. Without public garbage collection service, these apartment owners will retain private scavengers and, no doubt, at least part of that cost will be passed on to the tenants. *399 Lincoln Assocs.,* 244 *N.J.Super.* at 245, 581 *A.*2d 1364. We endorse Judge Stanton's observation that these tenants, at least on the local level, "have smaller political clout and lesser ability to assert their rights. They are at risk, and it is precisely those people who are not protected by legislation such as this." The profit factor should not forfeit the right of these tenants to equal treatment.

Defendants acknowledge that our holdings in *Boulevard Apartments, Inc.* and *399 Lincoln Assocs.* would be fatal to their position but for our holding in *New Jersey State League of Municipalities,* 257 *N.J.Super.* 509, 608 *A.*2d 965. There, we considered the constitutionality of newly-adopted *P.L.* 1989, c. 299, codified as *N.J.S.A.* 40:67–23.2 to –23.8, which mandates that municipalities provide certain municipal services, or reimburse for such services, to condominiums and other private communities, but

not to apartment complexes. 257 *N.J.Super.* at 513, 608 *A.2d* 965. The League of Municipalities challenged the statute on various grounds, including the argument that it deprived apartment owners of equal protection of the law. *Id.* at 513–14, 608 *A.2d* 965. The trial court agreed and invalidated the statute. *Id.* at 514, 608 *A.2d* 965. Before us, the State argued that there was a reasonable basis for the distinction made between apartment complexes and other residential communities, including condominiums, because such communities and condominiums "foster the valid goal of individual home ownership." *Id.* at 516, 608 *A.2d* 965. The League responded that the statute was over-inclusive and irrational if intended to promote home ownership, since a significant percentage of condominium owners rent their units to others and thus are in an identical position as apartment owners. *Id.* at 517, 608 *A.2d* 965.[2]

As to the League's over-inclusiveness argument, we recognized that the statute benefitted the owners of condominiums who rented their units, as well as those who occupied the units. *Id.* at 520–21, 608 *A.2d* 965. We also acknowledged that the benefit to the former category did not promote the policy of fostering home ownership by helping those who pay twice for some municipal services. *Id.* at 521, 608 *A.2d* 965. Nevertheless, applying the "rational basis" test, we concluded that the statute need not be invalidated simply because it benefits some who are not members of the class the Legislature hoped to assist. *Ibid.* Groupings need not be mathematically precise. *Ibid.* Since "most condo owners do satisfy the Act's intended aim" by living in their unit, the fact that some do not share those traits "does not deprive the Act of all rational basis." *Ibid.* We concluded:

> the Legislature could have reasonably decided that condo owners as a group suffer most from the evil of double taxation. Most do live in their units and suffer from

---

[2] According to *New Jersey State League of Municipalities,* the 1980 Census showed that over one-fifth of New Jersey condominium owners rented their units to others. 257 *N.J.Super.* at 517–18, 608 *A.2d* 965.

the consequences of paying taxes and also having to pay condo fees to cover municipal services provided to other residents without charge.
[*Id.* at 521–22, 608 *A.*2d 965.]

The thrust of defendants' argument here is that *New Jersey State League of Municipalities* expressly recognizes that the fostering of home ownership is a rational basis to distinguish between apartment complexes and other residential dwellings. Relying on our analysis in *New Jersey State League of Municipalities,* defendants assert that providing garbage collection service to apartment buildings having less than four units promotes home ownership because "two and three family units offer owner-occupants an opportunity to own an affordable home while at the same time providing the owner a mechanism to pay for it."

In our view, this hypothetical rationale does not justify the Township's classification. In *New Jersey State League of Municipalities,* we concluded that the rational basis for the statutory classification was that doing away with double taxation (property tax and monthly condominium fees) encouraged home ownership by making the expense of condominium ownership less burdensome. *Id.* at 522, 608 *A.*2d 965. In other words, the statute makes condominium ownership more inviting because the owner-resident of the condominium no longer suffers "from the consequences of paying taxes and also having to pay condo fees to cover municipal services provided to other residents without charge." *Ibid.*

Here, it has never been argued that, by providing two- and three-unit apartment houses with garbage collection service, citizens would be encouraged to purchase such apartment houses. Defendants themselves recognize that what fosters home ownership of such a house is the rentability of at least one of the units, thereby "providing the owner a mechanism to pay for it." It is this "mechanism" and not garbage collection service, that may foster home ownership.

Moreover, even if some of the owners of two- and three-unit apartment houses reside in the apartment house and use rental

income from the other units to meet their roof expenses, the Township cannot rationally provide a municipal service to such resident-owners to the exclusion of other apartment dwellers simply because the latter reside in a complex with four or more units. That fact alone, as far as the excluded tenant is concerned, is entirely fortuitous; it does not make that tenant's need for the municipal service any less compelling than the needs of other residents.

Further, as Judge Stanton correctly observed, *New Jersey State League of Municipalities* involved a challenge to a statute which provided multiple services, such as garbage collection, lighting and snow removal, to a "qualified private community" such as residential condominium, cooperative and planned fee-simple developments. *See N.J.S.A.* 40:67–23.2 and –23.3. The Act's legislative goal was to give such a "qualified private community" relief where the residents of such communities do not receive tax abatements or tax exemptions, and yet pay monthly fees to homeowners associations to off-set the costs of such services charged by private entities. *See Statement to Senate Bill No. 2869* (1989), *P.L.* 1989, *c.* 299. *New Jersey State League of Municipalities*, in upholding the statute, was addressing a challenge to the entire statute based in part on its over-inclusiveness because it provided services to condominium owners who rent their unit to others. It did not address the discrete issue before us: whether the failure to make a specific municipal service equally available to all persons in like circumstances denies equal protection of the law.

Indeed, Judge Skillman in his concurring opinion in *New Jersey State League of Municipalities*, recognized that the issue now before us was not being addressed by the majority. 257 *N.J.Super.* at 522, 608 *A.*2d 965 (Skillman, J.A.D., concurring). Judge Skillman would have expressly preserved the issue:

this is not a suit by an apartment owner and his tenants seeking to extend the benefits of chapter 299 to apartments but rather a suit by the League of Municipalities and various municipalities seeking a declaration that the law is invalid in its entirety.

[*Id.* at 523, 608 *A* 2d 965.]

He went so far as to suggest that passage of *N.J.S.A.* 40:67–23.2 to –23.8 "may strengthen an apartment owner's claim of constitutional entitlement to those services, due to the similarities between qualified private communities and apartment complexes with respect to physical lay-out and other conditions." *Id.* at 523, 608 *A.*2d 965. We agree, and are satisfied that the majority opinion in *New Jersey State League of Municipalities* does not undercut the well-founded principles enunciated by us in *Boulevard Apartments, Inc.* and *399 Lincoln Assocs.*

Our dissenting colleague would reverse for the purpose of conducting a public hearing to determine whether there is a rational basis for the classification because: (1) the ordinance fosters home ownership; (2) there is a difference in the tax treatment between single-family homes and condominiums on the one hand, and large apartment complexes on the other; and (3) it may cost more to collect garbage from large apartment complexes than other residential units.

■ ˙ We are convinced that the first ground advanced by the dissent may be disposed of without a plenary hearing. As stated, what may foster home ownership of two- and three-unit apartment houses is the ability to rent at least one unit as a "mechanism to pay for it," not that the municipality provides garbage collection service to it. Even if a plenary hearing may show that this "mechanism" induces some to buy such apartment houses, the fact remains that once the Township decides to provide garbage collection service, "[t]here is a denial of equal protection of the laws unless the service is available to all persons in like circumstances upon the same terms and conditions." *Boulevard Apartments, Inc.*, 110 *N.J.Super.* at 411, 265 *A.*2d 838. All residents of Morristown in all types of housing, apartments, condominiums and single-family residences alike, produce the same type and amount of garbage, *id.* at 412, 265 *A.*2d 838, and all require the removal of garbage on a regular basis for health and safety reasons. The single fact that some residents have chosen to purchase and reside in two- and three-unit apartment houses does not diminish the

constitutional mandate that all persons in like circumstances be treated equally.

■ The second and third grounds advanced by the dissent surprise us and no doubt surprise the litigants and trial judge. Defendants have never even suggested that the classification was justified based on the difference in tax treatment between residences, condominiums and apartment complexes. They never asked for a plenary hearing on that issue. They did not brief it before the trial court, nor have they raised or briefed it before us. The single ground raised by defendants below and before us is that the ordinance fosters home ownership. The parties recognized this question as being legal in nature, and therefore no one pressed for a plenary hearing. We therefore are at a loss to understand the dissent's conclusion that "there is a material issue of fact as to whether there exists a rational basis for the classification made in the ordinance." *Post*, at 155, 661 *A*.2d at 328.

In any event, the dissent first notes the distinctions between taxation of residences, condominiums and apartments, and concludes that such distinctions "may well" constitute a reason for treating apartments differently. It is his view that the municipality may rationally conclude that, because of the limited ratables received from larger apartment buildings, "[t]he town may have well considered that the added expended resources [in collecting garbage from the complexes] were not worth the benefit." *Post*, at 165, 661 *A*.2d at 333.

First, not a single reported case is cited by the dissent in this jurisdiction or elsewhere which supports the proposition that, once a municipality decides to provide residential garbage collection service, it may refuse the service to larger apartment complexes simply because the assessment methodology for apartment complexes may be different than that applied to condominiums and single-family residences. Indeed, the municipalities in *Pleasure Bay Apartments, Boulevard Apartments, Inc.* and *399 Lincoln Assocs.*, never attempted to make such an argument. Perhaps

this is so because of the invidious consequences resulting from such a classification.

For example, it should make absolutely no difference if the taxes generated from plaintiff's 140-unit apartment complex are more or less than the taxes generated from 140 condominium units. It is undisputed that the Township includes the cost of collecting residential garbage as a component of its property tax. Presumably, plaintiff's apartment complex, condominium complexes and single-family residences are all assessed at true value for taxation purposes. *See Ford Motor Co. v. Township of Edison,* 127 *N.J.* 290, 298, 604 *A.*2d 580 (1992). When plaintiff pays its property taxes, it absorbs part of the cost of the garbage collection service provided to other residents within the Township. Depriving plaintiff of the service requires it to pay double for precisely the same service provided to other residential owners. In our view, such a result constitutes invidious discrimination. *See Juleah Co. v. Incorporated Village of Roslyn,* 56 *A.D.*2d 483, 392 *N.Y.S.*2d 926, 928 (1977), *aff'd o.b.,* 44 *N.Y.*2d 845, 406 *N.Y.S.*2d 760, 378 *N.E.*2d 123 (1978) (ordinance setting lower limits on amount of garbage collected per unit from apartment complexes than that imposed on one- and two-family homes, and imposing additional charge on apartment owners violated constitutional guarantee of equal protection).

Finally, the dissent reasons that a plenary hearing may produce evidence that "it in fact costs more to collect garbage from a larger apartment complex because the garbage at an apartment complex, although stacked in one or two places, is much greater than at smaller apartment buildings, and thus, takes longer to collect and remove." *Post,* at 168, 661 *A.*2d at 335. Again, defendants have never, either in the Law Division or before us, offered such a rationale to justify its classification. No doubt this is so because it is undisputed that the type and quantity of refuse generated by each tenant in large apartment complexes is no different than that generated by each resident in other types of housing. There is absolutely no suggestion, for example, that it

costs the Township more to collect the garbage of ten tenants, deposited in a single curbside dumpster, than it costs to collect garbage from ten condominium units, also deposited in a curbside dumpster. Nor is there any assertion that garbage collection from ten tenants costs more than collection from ten single-family residences. As we stated in *Boulevard Apartments, Inc.:*

> Moreover, it is clear that the cost of collection from family units in an apartment house where the accumulated garbage is concentrated in one spot to be picked up at the curb is unquestionably less than the cost of collection from an equal number of family units residing in separate private dwellings.
>
> [110 *N.J.Super.* at 412, 265 *A.*2d 838.]

The fact that defendants have never advanced such a reason for excluding large apartment complexes is sufficient reason not to reverse the judgment and thoughtful opinion of the Law Division, and require a plenary hearing on the issue.

We hold that the Township's ordinance denying garbage collection services to garden apartment complexes with four or more units denies the owners and tenants of such complexes equal right to a municipal service and is therefore unreasonable, discriminatory and invalid.

We affirm and remand for further proceedings.

PETRELLA, P.J.A.D., dissenting.

Defendants, the town of Morristown, its mayor and town council, and its health and public works departments, have appealed from a partial summary judgment which declared Morristown's garbage collection ordinance violative of the Equal Protection Clause. I disagree with the conclusion of the majority and would reverse the partial summary judgment and remand for trial because there is a material issue of fact as to whether there exists a rational basis for the classification made in the ordinance.

The subject ordinance provides for the collection and disposal of garbage at municipal expense from all "single-family dwellings," defined as any single-family home or apartment building with less than four dwelling units plus any condominium developments where not more than 50% of the units are owned by a single

individual or entity.[1]  *See* Morristown, N.J., Code, c. 109–1, –2 (1989).  The judge found the ordinance unconstitutional because there was no rational basis for defendants to provide services to some residential units but not all.

WHS Realty Company owns an apartment complex of 140 units in Morristown.  Morristown does not provide WHS Realty garbage collection and disposal services because it does not meet the definition of a single family dwelling.  WHS Realty has its garbage removed by a private contractor.  At various times during 1991, WHS Realty unsuccessfully demanded that Morristown provide it garbage collection services.

---

[1] Chapter 109–2 of Morristown's ordinance, entitled "Garbage and Recyclables," provides:

A.  Collection to be made twice weekly;  garbage to be placed at curb. (1) The Town, by its designated agents and employees shall collect and remove garbage from *single family dwellings* twice weekly . . . provided that no collection shall be made unless such garbage has been placed into proper receptacles or bundles for collection in the manner prescribed herein.  Where it is required to enter onto private property, in order to service condominium developments the Town shall only remove garbage from those condominium associations who have executed an agreement with the Town setting forth the specific guidelines for the collection of garbage, granting the Town permission to enter onto association property, indemnifying the Town from any claims for damage to private roads, driveways and curbs and naming the Town as an additional insured on its liability insurance policy for all claims arising out of the Town's collection of condominium association garbage.  The Town shall have the right to determine, in its sole discretion, whether or not it is necessary to enter onto private property in order to provide adequate service to condominium developments.

[Morristown, N.J., Code c. 109–2 (1989) (emphasis added).]

Chapter 109–1 of the ordinance defines "single family" dwelling as:

Any single family home, or any apartment building or housing complex containing less than four (4) dwelling units, plus any housing complex consisting of four (4) or more dwelling units in which the majority of such units are separately owned in fee or as condominiums.  The ownership of 50% or more of the dwelling units in any such housing complex by a single individual, a group of individuals or entity(s) shall disqualify such complex from being a single family dwelling for purposes of this ordinance.

[*Id.* c. 109–1.]

On September 22, 1992, WHS Realty filed a complaint to require that defendants provide it with garbage collection and disposal services and pay it damages for defendants' failure to provide such services. Specifically, in count one, WHS Realty asserted that defendants provide garbage collection and disposal services to other property owners within the municipality but arbitrarily, capriciously, and unreasonably refused to provide these services to it. In count two, WHS Realty alleged that defendants' refusal to provide it with garbage collection services is an arbitrary, capricious, and unreasonable abuse of discretion and a violation of due process and equal protection guaranteed by the New Jersey and United States Constitutions. In count three, WHS Realty maintained that defendants' refusal to provide it with garbage collection services violated its constitutional rights within the meaning of 42 *U.S.C.* § 1983, such actions being taken under color of state law. In count four, WHS Realty asserted that if the court determines that defendants need not provide it with garbage collection services, then WHS Realty is entitled to be compensated for the expenses it incurs in collecting its own garbage. In count five, WHS Realty maintained that if the court determines that it is not entitled to dumpster collection services, then it is entitled to curbside collection services. Finally, in count six, WHS Realty asserted that defendants improperly discriminated against it by not providing garbage disposal services to WHS Realty while providing such services to other property owners.

Defendants admitted that they refused to provide garbage collection and disposal services to WHS Realty, although they provide such services to other property owners. However, defendants denied that this refusal was improper or illegal. Defendants asserted as an affirmative defense that Morristown's ordinance was constitutional under *New Jersey State League of Municipalities v. State,* 257 *N.J.Super.* 509, 608 *A.*2d 965 (App.Div.1992), *certif. dismissed,* 133 *N.J.* 423, 627 *A.*2d 1132, *appeal dismissed,* 133 *N.J.* 419, 627 *A.*2d 1129 (1993).

WHS Realty moved for partial summary judgment on the ground that the ordinance denies it due process and equal protection. Defendants opposed the motion on the ground that the classification made by the ordinance was reasonable and constitutionally valid. The Law Division Judge held Morristown's ordinance unconstitutional as violative of the Equal Protection Clause. He reasoned that there was no rational basis for Morristown to distinguish between providing services to those who live in single-family homes or condominiums and those who live in rental units. He concluded that the different level of services discriminated against apartment dwellers in a way he thought was "unacceptable under our Constitution." The judge also felt that apartment complex owners were being discriminated against as somehow without adequate voice. The judge reached these conclusions without hearing any testimony either as to the intent and purpose of the statute or to test the validity of defendants' assertions that the statute was, in fact, reasonable.[2]

Defendants assert that the judge erred when he invalidated Morristown's garbage ordinance. They argue that the ordinance does not deny WHS Realty equal protection because it has a rational basis for excluding larger apartment buildings from municipal garbage collection. Defendants claim that the ordinance advances the legitimate government interest of promoting home ownership. They also contend that the judge erred in finding that the garbage ordinance is unfair to landlords.[3]

---

[2] The judge's order requiring Morristown to pick up WHS Realty's garbage at municipal expense was interlocutory because it did not decide the issue of what damages, if any, to which plaintiff is entitled. The Law Division granted a stay, noting that if the Appellate Division upheld his order, Morristown might be required to compensate WHS Realty for failure to provide garbage removal and disposal services as of November 1, 1994. We granted leave to appeal *nunc pro tunc*.

[3] Out of state cases on the issue of the constitutionality of municipal ordinances which provide garbage collection services to some but not all of a municipality's residential properties have been decided with differing results. For example, in *State ex rel. Miller v. McDonald*, 260 *Ind.* 565, 297 *N.E.*2d 826,

The majority correctly notes that a municipality is not required to provide garbage removal at its expense. *Pleasure Bay Apartments v. City of Long Branch*, 66 *N.J.* 79, 90, 328 *A.*2d 593 (1974) ("No case has ever held that a municipality electing to furnish garbage removal services at municipal expense must provide means and facilities which are all inclusive and will insure collection of all garbage and refuse produced in the municipality."). A municipality choosing to provide garbage removal service is under no duty to provide an inclusive service which removes all the garbage in the municipality. *Ibid.* All that is required is that the municipal action does not violate due process and equal protection of the laws. *Id.* at 91, 328 *A.*2d 593.

For example, in *Pleasure Bay Apartments*, our Supreme Court held it was permissible for a municipality to limit garbage collection to only curbside collection. The result of the curbside collection distinction was that the municipality collected garbage from

---

828 (1973), *cert. denied*, 414 *U.S.* 1158, 94 *S.Ct.* 917, 39 *L.Ed.*2d 111 (1974), plaintiffs successfully attacked on equal protection grounds a municipal ordinance which provided municipal garbage pick-up to apartment buildings with four or fewer units but not to apartment buildings with more units. In *Alexander v. City of Detroit*, 392 *Mich.* 30, 219 *N.W.*2d 41 (1974), Detroit's refuse collection ordinance was held violative of the Equal Protection Clause. That ordinance provided garbage collection for condominiums, cooperatives, and multiple dwellings of four or less units but not for multiple dwellings of five or more units.

On the other hand, the Seventh Circuit had no trouble upholding a similar ordinance in *Goldstein v. City of Chicago*, 504 *F.*2d 989 (7th Cir.1974). There, the ordinance provided municipal garbage collection for "multiple dwelling containing less than five living units, a multiple dwelling producing less than thirty-two gallons of refuse per week, or a multiple dwelling each living unit of which is individually heated by the tenant," but not for every other multiple dwelling unit. *Id.* at 990

Likewise, in *Carpenter v. Commissioner of Pub. Works of Racine*, 115 *Wis.*2d 211, 339 *N.W.*2d 608, 609 (App.1983), *cert. denied*, 466 *U.S.* 904, 104 *S.Ct.* 1680, 80 *L.Ed.*2d 155 (1984), an ordinance was upheld which provided that no building containing five or more dwelling units would receive garbage collection service. Plaintiff owned a building containing eight dwelling units. *Ibid.*

Thus, some jurisdictions strike down the type of ordinance at issue here and others have no trouble upholding it.

all single family homes, as well as from apartment complexes whose tenants placed their garbage at curbside. *Id.* at 90–91, 328 *A*.2d 593. But the municipality did not collect the garbage of apartment complexes which used dumpsters. *Id.* at 90–92, 328 *A*.2d 593. The distinction was held not to be invidious discrimination because the problems associated with entering the property of an apartment complex to collect trash made the distinction "real and not feigned." *Id.* at 95, 328 *A*.2d 593. *Accord Property Owners and Managers Ass'n v. Mayor of Parsippany–Troy Hills*, 264 *N.J.Super.* 538, 544–547, 624 *A*.2d 1381 (App.Div.), *certif. denied*, 134 *N.J.* 561, 636 *A*.2d 519 (1993).

The majority sets forth the appropriate three-tiered equal protection analysis. The Law Division Judge applied the lowest standard of review, rational basis scrutiny, but without an adequate record. *Pleasure Bay Apartments v. City of Long Branch*, *supra*, 66 *N.J.* at 91, 328 *A*.2d 593; *New Jersey State League of Municipalities v. State*, *supra*, 257 *N.J.Super.* at 518, 608 *A*.2d 965. A statute must be upheld under the rational basis tier if the statute is "rationally related to a legitimate state interest." *New Jersey State League of Municipalities v. State*, *supra*, 257 *N.J.Super.* at 518, 608 *A*.2d 965.

This standard also applies to all legislative actions by a municipality, and it accords municipal ordinances a strong presumption of constitutionality. *Pleasure Bay Apartments v. City of Long Branch*, *supra*, 66 *N.J.* at 93–94, 328 *A*.2d 593. The challenger has the burden to refute all possible rational bases for the differing treatment. *New Jersey State League of Municipalities v. State*, *supra*, 257 *N.J.Super.* at 518, 608 *A*.2d 965. As the majority also observes, legislation must be upheld if the court can conceive of any reason to justify the classification, even if the enacting body has not cited that reason for the enactment or the classification is fairly debatable. *Ibid.*

Thus, even if the relationship is slight, the burden of WHS Realty here is a heavy one. It must refute all possible rational bases for the differing treatment.

The trial judge on a summary judgment motion must determine whether there is a genuine issue of material fact, but cannot decide the issue if it exists. *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 73, 110 *A.*2d 24 (1954). Here, the summary judgment motion could be granted only if, as a matter of law, the trial judge was convinced that any conceivable municipal interest supporting the ordinance was not related to a rational basis.

We have indicated that the trial court should conduct an evidentiary hearing before it determines that a municipal garbage collection ordinance is declared unconstitutional. *Ballantyne House Assocs. v. City of Newark*, 269 *N.J.Super.* 322, 337–338, 635 *A.*2d 551 (App.Div.1993). In *Ballantyne House Assocs.*, plaintiffs, limited dividend housing corporations, entered into tax abatement agreements with defendant city relieving them of their obligation to pay property taxes, but requiring them to pay an annual fee for municipal services. *Id.* at 328, 635 *A.*2d 551. At the time of the agreement Newark provided plaintiffs with municipal garbage collection services. However, in 1983, Newark enacted a new ordinance which classified plaintiffs' property as commercial, thereby ostensibly relieving Newark of the obligation to collect garbage from plaintiffs' facilities. *Ibid.* Plaintiffs filed an action challenging Newark's termination of garbage collection services to their facilities.

On cross-motions for summary judgment, the motion judge granted plaintiffs partial summary judgment, concluding that Newark had contracted to provide garbage collection for the duration of the tax abatement agreements. *Id.* at 328–329, 635 *A.*2d 551. The judge further concluded that Newark's garbage collection ordinance was unconstitutional because it excluded properties owned by limited dividend housing corporations from municipal garbage collection while providing that service to other multi-family dwellings. *Id.* at 336, 635 *A.*2d 551.

We agreed that Newark had breached the tax abatement agreements by terminating garbage collection from plaintiffs' proper-

ties. *Id.* at 334, 635 *A.*2d 551. However, we determined that the motion judge had erred in finding the ordinance unconstitutional because the ruling was unnecessary and was based on an inadequate record. *Id.* at 336, 635 *A.*2d 551.

Although the facts in *Ballantyne* differ from those here, that case points out that a judge should be cautious about declaring a municipal ordinance unconstitutional without first testing, through a hearing, the municipality's stated reason for the ordinance's classification. Indeed, such a hearing was necessary here because there are at least two rational bases underlying the subject ordinance, and there was no fact-finding for an appellate court to review.

The potential rational bases were raised in *New Jersey State League of Municipalities v. State, supra,* 257 *N.J.Super.* at 509, 608 *A.*2d 965. There we considered the constitutionality of *N.J.S.A.* 40:67–23.2 to –23.8, which mandates that municipalities provide services for "residential condominium, cooperative, fee simple community, or horizontal property regime[s]." 257 *N.J.Super.* at 515, 608 *A.*2d 965. The statute was challenged by the plaintiff on various grounds including that it deprived equal protection of the law to apartment owners. The trial court, granting plaintiff's motion for summary judgment, struck down the statute on the basis of this argument, finding that the statute sought to correct the "double taxation" burden on condominium owners, but was improperly underinclusive since it did not extend this benefit to apartment owners. *Id.* at 518, 608 *A.*2d 965.

Before this court the State advanced two reasonable bases for the distinction the statute made between apartment complexes and condominiums: (1) apartments are assessed differently from condominiums and cooperatives; and, (2) condominiums and cooperatives "foster the valid goal of individual home ownership." *Id.* at 516, 608 *A.*2d 965. We declined there to accept the assessment argument without a hearing at which a tax expert could be heard. However, we accepted that condominiums may be treated differently in order to promote home ownership. *Ibid.*

On appeal, the plaintiff argued that the statute was both under- and overinclusive. *Id.* at 517–518; 520–522, 608 *A.*2d 965. On one hand, plaintiff argued the statute was underinclusive because the statute was meant to relieve the double tax burden on condominium owners, but did not relieve that burden on apartment owners who it was argued were essentially in the same position as condominium owners who rented out their units. *Id.* at 518, 608 *A.*2d 965. Plaintiff asserted that on the other hand, the statute was overinclusive because, if the statute was meant to promote home ownership, the distinction was irrational because it was alleged that a significant percentage of condominium owners rent their units and would thus appear to be in a similar position to apartment owners.[4] *Id.* at 517, 608 *A.*2d 965.

This court scrutinized the statute under the rational basis test, observing that this was the lowest level of equal protection scrutiny, and that a statute within this tier must be upheld even if the reasonableness of the classification is fairly debatable. *Id.* at 518–519, 608 *A.*2d 965. We held that even if the statute was underinclusive and hence, unfair or unwise in some applications, this alone was not a sufficient basis for invalidation because the statute is related to the rational purpose of promoting home ownership. *Id.* at 520, 608 *A.*2d 965. We further held that although the rational purpose of the statute was not served in an overinclusive application, groupings of members benefitted by the statute need not be mathematically precise.[5] *Ibid.*

Obviously, the classification created by the ordinance here is significantly different than the classification in *New Jersey State League of Municipalities.* Here, the ordinance draws a distinc-

---

[4] The record in *New Jersey State League of Municipalities* included a 1980 Census showing that over one-fifth of New Jersey condominium owners rent their units to others. 257 *N.J.Super.* at 517–518, 608 *A.*2d 965.

Of course, nothing prevents a single family homeowner from renting his home temporarily or even on a more or less permanent basis for any reason.

[5] We declined to "consider how large the deviating percentage may be before the law loses its rational basis." *Ibid.*

tion between apartment complexes with four or less units and those with greater than four units; the classification in *New Jersey State League of Municipalities* simply omitted apartments altogether from its regulatory scheme. *Compare* Morristown, N.J., Code c. 109–1, –2 (1989), and *N.J.S.A.* 40:67–23.2. The fact that this distinction is drawn, however, does not necessarily render Morristown's ordinance unconstitutional, because *Pleasure Bay Apartments* teaches that municipalities need not provide garbage collection for all of their residents. Rather, the municipality need only draw upon a rational basis to support its decision as to who should qualify for garbage collection at municipal expense.

First, as to the purported goal of advancing home ownership, the majority may very well be correct as to the fact that providing collection to apartment buildings with three or fewer units has no obvious relationship to the stated goal.[6] Morristown attempted, however, to create a connection by asserting that in many dwelling units containing three or fewer units, the owner occupies one unit and rents out the others.[7] The majority overlooks the fact that unlike *New Jersey League of Municipalities*, we have no record here to support such a claim because the matter was decided upon a motion for partial summary judgment. There is no evidence in

---

[6] The judge did not specifically address the home ownership rationale. But, he expressed a personal view, not necessarily supported by caselaw, when he said:

> I have always ruled that once a municipality starts to collect garbage from residents, it must collect them from all residents, including those who live in rental apartments and it must collect them from residents in rental apartments regardless of the number of units in the residential rental apartment complex.

[7] Specifically, at oral argument, defense counsel asserted that this is an affordable way to own a home. Defendants argue that one unit of two and three family dwelling units is often occupied by the owner, who rents out the other units. Defendants therefore assert that providing these two and three unit buildings with municipal garbage collection promotes home ownership because "two and three family units offer owner-occupants an opportunity to own an affordable home while at the same time providing the owner a mechanism to pay for it."

the record that dwellings of three or fewer units in Morristown generally are or are not commonly owner-occupied. Without such evidence, it cannot be determined whether the classification is rationally related to this legitimate state interest.

Second, the majority skirts the financial consequences raised, but not considered in *New Jersey League of Municipalities*.[8] It is indeed clear that more traditional residences and condominiums are taxed differently than apartments, and our case law has at various points commented upon this. *See, e.g., Schwam v. Tp. of Cedar Grove*, 228 *N.J.Super.* 522, 526–527, 550 *A.*2d 502 (App.Div. 1988), *certif. denied*, 115 *N.J.* 76–77, 556 *A.*2d 1219 (1989); *Inwood Owners, Inc. v. Tp. of Little Falls*, 216 *N.J.Super.* 485, 524 *A.*2d 441 (App.Div.1987), *certif. denied*, 108 *N.J.* 184, 528 *A.*2d 13 (1987).[9] The underlying logic supporting these distinctions may well constitute a reason for treating large apartment complexes differently than smaller ones. For example, Morristown might be required to spend as much or more time, effort, and human and fiscal resources on collecting and disposing of garbage from large apartment complexes as it does for apartments with four or less units, condominiums, and other "single family dwellings" even though the tax ratables received from larger apartment building may be equal to or close to those received from smaller apartment buildings. The town may have well considered that the added expended resources were not worth the benefit. In any event, this should be a factor developed at trial by municipal tax and finance experts so that an adequate record for review will be accorded us. The record here is in my view totally inadequate for intelligent review on this ground.

[8] As previously noted, *New Jersey League of Municipalities* did not consider the tax consequences of *N.J.S.A.* 40:67–23 to 23.8 because it had some evidence (a census report) underlying the promotion of home ownership as a rational basis.

[9] Generally, an apartment building is valued as one structure, and each condominium is valued and assessed as an individual and separate taxable property.

Finally, Morristown also argues that the judge erred in finding that its garbage ordinance is unfair to landlords.[10] The test for the constitutionality of the ordinance is whether there is a rational relationship between the classification and a legitimate governmental purpose. As *New Jersey League of Municipalities* held, a legislative enactment entitled to rational-basis constitutional scrutiny need not be perfectly drawn; nor must it encompass only those groups it was intended to regulate. Only a statute that is underinclusive by a wide margin can be invalidated. A hearing should have been held as to the number of landlords adversely affected by the ordinance and the extent of its underinclusiveness.

The two cases relied upon by both the motion judge and the majority support the proposition that the motion judge erred in declaring Morristown's garbage collection ordinance unconstitutional without first holding a fact-finding hearing to measure the weight of the rational bases raised by the municipality.

Thus, in *399 Lincoln Assocs. v. City of Orange*, 244 *N.J.Super.* 238, 581 *A.*2d 1364 (App.Div.1990), we invalidated a municipal ordinance similar to the one at issue here. There, before 1989, defendant city passed an ordinance restricting municipal garbage collection to residential units containing less than five units. *Ibid.* The plaintiff, an apartment complex owner of 716 units, challenged the ordinance on equal protection grounds. *Ibid.*

After a two-day hearing on the intent and purposes of the ordinance the judge found the ordinance unconstitutional, and we affirmed. *Id.* at 240–241, 581 *A.*2d 1364. On appeal, defendant had argued: it adopted the ordinance in an effort to save money, particularly in light of a substantial increase in tipping fees, *id.* at 243, 581 *A.*2d 1364; and, in light of the "cut-off" numbers used in various similar local, State, and federal regulations, the ordinance

---

[10] The Law Division Judge did include some language in his opinion which suggested that he believed that owners of apartment complexes were being discriminated against because Morristown refused to collect garbage from larger apartment complexes. Defendants replied by citing to their rent control ordinance as protecting both landlords and tenants.

served the rational basis of administrative convenience.[11]  *Id.* at 244, 581 *A.*2d 1364.

We rejected the first reason, noting that the City of Orange had made no study comparing the volume of waste generated on a per-unit basis by one to four-family dwellings to the volume generated by dwellings containing five or more units.  *Id.* at 242, 581 *A.*2d 1364.  The city had only considered the total tonnage generated by dwellings containing five or more units.  We noted that the record in that case showed that the per-unit cost of picking up trash from a multi-unit dwelling was cheaper than from single family homes or multi-family dwellings of less than five units.  *Ibid.*

Next, although we acknowledged that administrative convenience is recognized as a rational basis for a classification, we rejected that argument as applied to the ordinance in question.  We noted that of the legislation cited by the city, only one statute used the five-unit and over distinction, while the others classified by three or four and more units.  *Ibid.*  Thus, some regulated housing was excluded from the classification drawn by defendant.  We concluded:

> [T]he evils addressed in the legislation upon which the City relied, including their numerical cut-offs for applicability of the regulation, do not concern garbage collection.  Thus, the constitutional propriety of the numerical cut-off points selected for the purpose of that legislation is totally unrelated to the issues involved in this case.  *The Director of Public Works specifically conceded that there is*

---

[11] Specifically, defendant stated that it had chosen the five-unit dwelling cut-off, because other federal, state, and local legislation applied only to residential premises containing more than three, four, or five dwelling units  Defendant cited regulation of residential premises by the Fair Housing Chapter of the Civil Rights Act of 1968, 42 *U.S.C.A.* § 3602 to § 3631, which proscribed discrimination in rental of units within multiple family dwellings of five or more units; the New Jersey Hotel and Multiple Dwelling Law, *N.J.S.A.* 55:13A-3(k), which set standards for safety and habitation of dwelling units and applied to multiple family dwellings of three or more units, and the Orange Rent Leveling Ordinance which only applied to multiple family dwellings of four or more units, none of which were owner occupied.  244 *N.J.Super.* at 244, 581 *A.*2d 1364  Defendant argued that this classification was administratively convenient because it could maintain existing groupings of regulated units.  *Ibid.*

> nothing making it administratively convenient to pick up garbage from four families and less dwelling units as compared to five families or more. It is obvious that the result of the present ordinance does not treat alike, persons situated alike. A commercial landlord who rents a one, two, three or four-family building receives free garbage collection and thus does not have to factor into his rent a cost for that service, whereas, a commercial landlord with five or more units must pay for this service and thereby factor that cost into the rents charged. Persons situated alike are not treated alike under Ordinance # 5-89, and thus it is unconstitutional.
>
> [*Id.* at 245, 581 *A.*2d 1364 (citation omitted) (emphasis added)].

Similar to the ordinance in *399 Lincoln Assocs., supra,* which provided municipal collection to buildings holding fewer than five units, the Morristown ordinance here provides municipal collection to those apartment buildings with fewer than four rental units. However, here, unlike *399 Lincoln Assocs.,* no hearing was held to determine the purpose of the ordinance and the relationship between the classification and the stated purpose. The partial summary judgment declaring the ordinance unconstitutional was granted after brief oral argument; no factual record was developed. Indeed, the proofs may show that it in fact costs more to collect garbage from a larger apartment complex because the garbage at an apartment complex, although stacked in one or two places,[12] is much greater than at smaller apartment buildings, and thus, takes longer to collect and remove.

Also, in *Boulevard Apartments, Inc. v. Mayor of Lodi,* 110 *N.J.Super.* 406, 265 *A.*2d 838 (App.Div.), *certif. denied,* 57 *N.J.* 124, 270 *A.*2d 27 (1970), upon which *399 Lincoln Assocs., supra,* relied, the defendant municipality passed a resolution excluding "garden[-]type apartment houses and high rise apartment houses" from municipal garbage pick up. *Id.* at 408–409, 265 *A.*2d 838. Boulevard Apartments, the owner of a garden-type apartment complex, brought an action to have the resolution invalidated as arbitrary, capricious, and discriminatory. A trial was held and the trial court upheld the resolution. *Id.* at 410, 265 *A.*2d 838. We reversed because we could find no rational basis for the resolution

---

[12] As per municipal ordinance 109–3(D), garbage must be set at curbside for municipal collection.

discriminating between garden-type apartments and all other residential dwellings. *Id.* at 411, 265 *A.*2d 838. Again, however, *Boulevard Apartments* found after a trial there was no rational basis for the ordinance in question because evidence introduced at the trial indicated such was the case. Here, no evidence in the record exists to support the propositions advanced by the parties.

I would reverse the grant of partial summary judgment and remand to the trial court for the development of a record on whether the ordinance's classification is rationally related to the legitimate state interest of promoting home ownership or to any other state interest defendants may assert. Specifically, the hearings below should include evidence as to whether there is a relationship between the classification made by the ordinance and the legitimate legislative goal of promoting home ownership; the fiscal consequences of extending municipal garbage collection to large apartment buildings; the cost of collecting and removing large quantities of garbage from one area, and any other basis defendants might offer to justify the ordinance. If Morristown on remand asserts any legitimate goal which supports the distinction then WHS Realty would have the burden of refuting that goal as well. *New Jersey State League of Municipalities, supra,* 257 *N.J.Super.* at 518, 608 *A.*2d 965.

661 A.2d 335
STATE OF NEW JERSEY, PLAINTIFF, v.
WILLIS WARRICK, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Monmouth County

Decided March 17, 1995.