110 N.J. Super. 406 (1970)
265 A.2d 838
BOULEVARD APARTMENTS, INC., PLAINTIFF-APPELLANT,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF LODI, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1969.
Decided June 8, 1970.
*408 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Benedict Krieger argued the cause for appellant (Messrs. Krieger & Klein, attorneys).
Mr. John Di Maria argued the cause for respondents (Messrs. Carbonetti & Di Maria, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by Boulevard Apartments, Inc. from a judgment of the Law Division upholding the validity of a resolution adopted by the Borough of Lodi which excluded garden-type apartment houses from receiving municipal garbage collection service.
Appellant is the owner of a garden-type apartment house complex consisting of six two-story buildings containing a total of 108 family units. Each building consists of a grouping of four-family units separated by fire walls and sharing a common roof. Prior to January 1, 1969 the garbage from these apartments was collected by a contractor hired by the borough to collect garbage placed in receptacles at the street curb from residential buildings and other specified places, excluding light and heavy industry, warehouses and supermarkets. On December 9, 1968 the Lodi municipal council adopted a resolution which established new classifications of properties which were to be excluded from receiving municipal garbage collection service after January 1, 1969. The resolution contained the following specifications upon which bids for a five-year garbage collection contract were to be based:
*409 Two collections weekly from all residential dwellings, places of business, churches, club houses, lodge rooms, public buildings, public and parochial schools, gasoline stations and all public housing operated by the Housing Authority of the Borough of Lodi (not including garment manufacturing shops, light or heavy industry, warehouses, supermarkets, garden type apartment houses and high rise apartment houses).
On December 23, 1968 the borough awarded a five-year contract to Vito Stamato based on his bid of $940,000.
Boulevard Apartments, Inc. brought an action in lieu of prerogative writs to invalidate that part of the resolution which excluded garden-type apartment houses from receiving garbage collection service, contending that it was unreasonable, capricious and discriminatory. (Grand View Manor, Inc., the owner of a garden-type apartment house containing 24 family units, also joined in the action as a party plaintiff but is not a party to this appeal.)
At the trial it was established that there are 38 garden-type apartment houses listed in the borough containing from 1400 to 1470 family units which, with the exception of appellant and Grand View Manor, Inc., have garbage collected by privately hired contractors. (Stamato, called as a witness by defendants, testified that the quantity of garbage generated at the apartment complexes other than those of plaintiff and Grand View Manor, Inc. was so great that storage pending twice-a-week collections created health problems. As a result, the owners of those apartments arrange for private container services, with daily collections of garbage.) Stamato testified that if the borough was required to collect garbage from all garden-type apartments the additional annual cost to the municipality would be $75,000 to $80,000. There also was evidence that there were numerous other multiple-family dwellings in the borough, ranging from two-family to eight-family houses, all of which have garbage collected by the municipal collection service. A substantial amount of the testimony was devoted to a comparison of the per-acre population density of garden-type *410 apartment houses and that of ordinary residential dwellings, and the difference in quantity of garbage produced.
The court held that the resolution excluding garden-type apartment houses from receiving municipal garbage collection service was valid and the exclusion was not unreasonable or discriminatory. In arriving at this decision the court concluded that garden-type apartment houses were not in the same category or classification as other types of residential dwellings because they were commercial ventures and the quantity of garbage produced from a garden-type apartment house per family unit was three times that of a private dwelling. This appeal followed.
The principal contention urged by appellant for a reversal is that the classifications set up by the resolution are so clearly arbitrary, unreasonable and discriminatory as to render them invalid. It argues that there is no rational basis for differentiating between garden-type apartment houses and other residential dwellings when determining what properties are to be furnished curbside garbage collection.
The removal and disposal of garbage and other refuse matter is recognized as a proper subject for the exercise of the power of a municipality to adopt legislation designed to promote the public health, comfort and safety. N.J.S.A. 40:66-1 provides that a municipality may provide for the collection, removal and disposal of garbage and may establish and operate a system therefor. It may contract with a person to collect the garbage (N.J.S.A. 40:66-4) and provide that the cost of doing the work be paid from its general funds or may fix rates to be charged by the municipality for such service (N.J.S.A. 40:66-5). Municipalities have wide latitude in determining the manner of control of garbage and their pertinent ordinances and resolutions, being entitled to the customary presumption of legislative validity, will not be upset unless palpably unreasonable. Dover Tp. v. Witt, 7 N.J. Super. 259, 262 (App. Div. 1950).
*411 However, municipal legislation relating to garbage collection and disposal must be reasonable and not arbitrary or oppressive. 7 McQuillin, Municipal Corporations (rev. ed. 1968), § 24.245, at 87. Legislation limiting the collection of garbage to certain classifications is not forbidden. However, there can be no invidious discrimination in the establishment of such classifications. There is a denial of equal protection of the laws unless the service is available to all persons in like circumstances upon the same terms and conditions. Persons situated alike shall be treated alike. See Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229, 233 (1952).
Thus, the question involved in the instant case is whether the municipal resolution is invalid as unreasonable and discriminatory because it places garden-type apartment houses in a classification separate and apart from other residential dwellings in order to exclude such properties from receiving the benefits of garbage collection service. The question has apparently not been dealt with by the courts of our State or of other jurisdictions. The cases cited by respondent and relied upon by the trial court are inapposite. For the most part they relate to municipal ordinances which limit the quantity of garbage or ashes to be collected from an apartment house, a subject with which we are not here concerned.
We can discern no rational basis for differentiating between garden-type apartment houses and all other residential dwellings, because apartments are rented to tenants and the owner may realize a profit on his investment. The resolution in question makes no distinction between owner-occupied dwellings and those rented for income. The evidence reveals that there are numerous rented multi-family dwellings containing from two to eight family units which are not precluded from receiving municipal garbage collection service. Moreover, the resolution on its face provides for collection from public housing projects and various places of business.
*412 We also find no reasonable justification for the municipality to classify garden-type apartment houses differently from other residential dwellings on the basis of the quantity of garbage produced and the cost of collection thereof. It is apparent that the trial court misunderstood the testimony in arriving at a conclusion that the quantity of garbage produced from each garden apartment family unit was three times that of a private dwelling. The record clearly shows that the garbage produced by a one-family unit in an apartment house and a one-family dwelling house is substantially the same. Moreover, it is clear that the cost of collection from family units in an apartment house where the accumulated garbage is concentrated in one spot to be picked up at the curb is unquestionably less than the cost of collection from an equal number of family units residing in separate private dwellings.
We conclude that that part of the municipal resolution which classifies garden-type apartment houses separately from other dwelling houses and thereby denies such properties an equal right to garbage collection service is unreasonable, discriminatory and invalid and cannot be enforced.
In view of our decision we deem it unnecessary to pass on the other points raised in appellant's brief, except to note that it was error to refuse to admit into evidence the Lodi ordinance regulating the collection of garbage in effect both when the resolution here under attack was adopted and at the time of the trial. That ordinance provided in section 3 thereof that
No person shall engage in the removal and disposal of garbage, ashes, refuse and trash from any residential premises, school or church within the Borough of Lodi, unless it be pursuant to contract between each person and the Borough of Lodi.
Altogether apart from the issue of illegal classification, the resolution embodying the refusal of the municipality to continue to furnish garbage removal service to garden apartments, which by ordinance were precluded from obtaining *413 that service from other persons, was clearly arbitrary and illegal. However, the problem presented by the garbage collection ordinance no longer exists. The ordinance was amended on March 3, 1969, a month after entry of the judgment in this case, to permit private garbage collection from garden apartments.
The judgment is reversed and the case remanded to the Law Division for the entry of judgment in conformance with this opinion.