244 N.J. Super. 238 (1990)
581 A.2d 1364
399 LINCOLN ASSOCIATES, 467 LINCOLN ASSOCIATES; EDENBORO COOPERATIVE CORPORATION; 283-293 ASSOCIATES; 445 ASSOCIATES; SOUTH CENTER ASSOCIATES; 365-373 ASSOCIATES; LINCOLN/CENTRAL ASSOCIATES; MANLOW CORPORATION, A NEW JERSEY CORPORATION; RIDGE GARDENS, A PARTNERSHIP; AND SOUTH ORANGE GARDENS, A PARTNERSHIP, PLAINTIFFS-RESPONDENTS,
v.
CITY OF ORANGE TOWNSHIP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 25, 1990.
Decided November 2, 1990.
*239 Before Judges ANTELL, O'BRIEN and SCALERA.
Michael Critchley, City Attorney, attorney for appellant.
*240 Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys for respondents (Lance A. Posner and Charles X. Gormally, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from a determination of the Law Division finding an ordinance concerning garbage, rubbish and refuse collection unconstitutional. We affirm.
In late 1988, the business administrator for the City of Orange Township (City) began to review the cost of garbage removal because of an anticipated fiscal crisis as a result of a reduction in state aid. On his recommendation, Ordinance # 5-89 was adopted on April 4, 1989 as an amendment to Chapter 107 of the Code of the City, entitled "Garbage, Rubbish and Refuse." The title to the ordinance recited that it was to amend the code to clarify responsibility for collections. The ordinance provides that the City will collect and remove household waste matter as defined in the ordinance "to the residents or occupants of any residential source in the City." Residential source is defined as "households and other dwelling units not defined as a commercial source in paragraph (c) of this section." Paragraph (c) defines commercial source as including "any residential premises that contain five dwelling units or more."
Plaintiffs, owners of 716 dwelling units which are a mix of high-rise, low-rise and garden-apartment dwellings, containing five dwelling units or more, from most of which solid waste had been collected by the City before the adoption of the ordinance, filed a complaint in lieu of prerogative writs to challenge the ordinance. Process began by order to show cause entered on April 20, 1989, which included temporary restraints upon the implementation of the ordinance. On the return day of the order to show cause, the trial judge reserved decision on the question of the ordinance's constitutionality and decided to take testimony regarding the intent and purpose of the ordinance. *241 The temporary restraints were continued pending final disposition of the matter.
Testimony was taken on June 7 and 8, 1989, at the conclusion of which the trial judge found the ordinance to be unconstitutional. The city filed a notice of appeal on July 11, 1989. We treated that notice as a motion for leave to appeal nunc pro tunc, which we granted on September 28, 1989.
In finding the ordinance unconstitutional, the trial judge relied upon our decision in Boulevard Apts., Inc. v. Mayor & Coun. of Lodi, 110 N.J. Super. 406, 265 A.2d 838 (App.Div. 1970), and said:
... There is a denial of equal protection of the laws unless the service is available to all persons in like circumstances upon the same terms and conditions. Persons situated alike shall be treated alike. And here as far as I can determine there's absolutely no reason for saying five families or more. It's just an arbitrary selection based upon statutes that have nothing whatsoever to do with the collection of garbage.
We agree. There is no dispute that the decision to provide garbage removal and disposal service is discretionary with the municipality. Pleasure Bay Apts. v. City of Long Branch, 66 N.J. 79, 90, 328 A.2d 593 (1974). Fiscal costs and administrative constraints alone may furnish a legitimate basis for a municipal decision. Id. at 96, 328 A.2d 593. Municipalities holding properly delegated powers may legislate according to "reasonable classification of the objects of the legislation or the persons whom it affects." Guill v. Mayor & Council of City of Hoboken, 21 N.J. 574, 582, 122 A.2d 881 (1956). However, the classification cannot be arbitrary or illusory, but must bear some just and reasonable connection with the primary object of the legislation. Id. at 583, 122 A.2d 881.
Legislation limiting the collection of garbage to certain classifications is not forbidden. Boulevard Apts., Inc. v. Mayor & Coun. of Lodi, supra, 110 N.J. Super. at 411, 265 A.2d 838. However, there can be no invidious discrimination in the establishment of such classifications. "There is a denial of equal protection of the laws unless the service is available to all *242 persons in like circumstances on the same terms and conditions. Persons situated alike shall be treated alike." Ibid.
In Boulevard Apts., we held there was no rational basis for differentiating between garden-type apartment houses and all other residential dwellings and found such classification unreasonable, discriminatory and violative of equal protection. Id. at 411-412, 265 A.2d 838. There, we reasoned that (1) the resolution made no distinction between owner-occupied dwellings and those rented for income; (2) the evidence revealed numerous rented multi-family dwellings containing two to eight-family units which were not precluded from receiving municipal garbage collection service; (3) the record showed that garbage produced by a one-family unit in an apartment house and a one-family dwelling house was substantially the same; (4) the cost of collection from family units in an apartment house where the accumulated garbage is concentrated in one spot to be picked up at the curb was less than the cost of collection from an equal number of family units residing in separate private dwellings. Id. at 411-412, 265 A.2d 838.
Our reasoning in Boulevard Apts. is equally applicable to this case. The volume of garbage on a per-unit basis generated by a five-family home is the same as other multi-family dwellings. No study was done specifically comparing the volume of garbage generated on a per-unit basis by one to four-family dwellings to the volume generated by five and more family dwellings. In determining what a "commercial source" of garbage was, the city considered neither the nature of the garbage produced nor the volume of garbage per unit produced. It only considered the total tonnage produced by five and more dwelling units. The record indicated that the cost of collection from multi-dwelling units is cheaper than the cost of collection from an equal number of single-family residences. Thus, the circumstances in this case are fairly analogous to those in Boulevard Apts.
*243 A closer analogy is to be found with an Indiana case, State ex rel. Miller v. McDonald, 260 Ind. 565, 297 N.E.2d 826 (1973), cert. denied, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 111 (1974), which, similar to the ordinance in this case, provided that apartment houses of four or less units were eligible for city garbage collection service while apartments exceeding that size were considered "commercial enterprises" and not entitled to such service. The Indiana Supreme Court held that the ordinance "transparently distinguishes between commercial and non-commercial enterprises." It found that the ordinance applied a double standard to those who, in reality, were in the same class.
Likewise, in Alexander v. City of Detroit, 392 Mich. 30, 219 N.W.2d 41 (1974), a similar ordinance was found to be unconstitutional on equal protection grounds as an improper classification of the properties in question. The court's rationale was as follows:
For Ordinance 442-G to declare that `domestic waste' in multiple dwellings of more than four units is `commercial waste,' is to declare a sudden transformation by name only. Ordinance 442-G attempted a distinction without a difference which is arbitrary, unreasonable, and violative of the equal protection clause of the federal and state constitutions. [Id. 219 N.W.2d at 45; see also Juleah Co., Inc. v. Village of Roslyn, 56 A.D.2d 483, 392 N.Y.S.2d 926 (1977)]
Appellant's reliance upon Pleasure Bay Apts. v. City of Long Branch, supra, is misplaced. There, the court determined that it was not invidious discrimination to limit garbage collection to curbside collection and exclude collection from dumpsters. The court concluded that the classification was "based on real and not feigned differences in the problems inherent in collecting garbage from locations within a landowner's premises as contrasted with collections from curbside." Id. 66 N.J. at 95, 328 A.2d 593.
In addressing the impending fiscal crisis, the City sought to limit its costs of garbage collection particularly in light of the substantial increase in tipping fees. In an effort to define a "commercial source," the City concluded that it would be appropriate to distinguish regulated residential units from nonregulated *244 residential units to determine which were commercial. In doing so, it looked to the Fair Housing Chapter of the Civil Rights Act of 1968, 42 U.S.C.A. § 3602 et seq., which proscribes discrimination in the rental of residential premises applying only to multi-family dwellings containing five or more dwelling units, 42 U.S.C.A. § 3603(b)(2), the New Jersey Hotel & Multiple Dwelling Law, which sets standards for safety and habitability of dwelling units, but applies only to multi-family residences containing three or more units, N.J.S.A. 55:13A-3(k), and the Orange Rent Leveling Ordinance regulating rent increases which only applies to multi-family dwellings containing four or more units, none of which are owner occupied. In selecting the cut-off point at five rental units, the City reasoned that those residences exempt from operation of federal, state and local regulations for other purposes should also be exempt from operation of the City's garbage collection scheme. The City argues that this classification was administratively convenient because it allowed the City to maintain existing groupings and eliminated the need for creating a number of different categories of dwellings, each set of categories subject to some different regulation.
Administrative convenience is generally acceptable as a rational basis for classification, at least where the interest affected by the classification is neither fundamental nor suspect. Barone v. Dept. of Human Serv. Div. of Med. Asst., 210 N.J. Super. 276, 293, 509 A.2d 786 (App.Div. 1986). It suffices if the classification has a rational and just relation either to the fulfillment of the essential legislative design or to some substantial consideration of policy or convenience bearing upon the common welfare. Guill v. Mayor & Council of Hoboken, supra, 21 N.J. at 583, 122 A.2d 881. In considering the numerical limitations applied in the various regulatory laws considered, the City chose the highest number in order to be as inclusive as possible. However, in doing so, the result is that some regulated housing is excluded from the definition of "commercial source" and thus receives garbage collection.
*245 More importantly, the evils addressed in the legislation upon which the City relied, including their numerical cut-offs for applicability of the regulation, do not concern garbage collection. Thus, the constitutional propriety of the numerical cut-off points selected for the purpose of that legislation is totally unrelated to the issues involved in this case. The Director of Public Works specifically conceded that there is nothing making it administratively convenient to pick up garbage from four families and less dwelling units as compared to five families or more. It is obvious that the result of the present ordinance does not treat alike, persons situated alike. Boulevard Apts., Inc. v. Mayor & Council of Lodi, supra, 110 N.J. Super. at 411, 265 A.2d 838. A commercial landlord who rents a one, two, three or four-family building receives free garbage collection and thus does not have to factor into his rent a cost for that service, whereas, a commercial landlord with five or more units must pay for this service and thereby factor that cost into the rents charged. Persons situated alike are not treated alike under Ordinance # 5-89, and thus it is unconstitutional.
Affirmed.