733 A.2d 1206 (1999)
323 N.J. Super. 553
WHS REALTY COMPANY, a New Jersey General Partnership, Plaintiff-Respondent and Cross-Appellant,
v.
TOWN OF MORRISTOWN; Mayor and Town Council of the Town of Morristown; Town of Morristown Health Department; Town of Morristown Public Works Department, Defendants-Appellants and Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1999.
Decided July 27, 1999.
*1209 Herbert A. Vogel and David H. Soloway, Morristown, for appellants/cross-respondents (Vogel, Chait, Schwartz & Collins, attorneys; Mr. Vogel and Mr. Soloway, on the brief).
Gary D. Gordon, West Orange, for respondent/cross-appellants (Feinstein, Raiss & Kelin, attorneys; Mr. Gordon, on the brief).
William J. Kearns, Jr., for amicus curiae New Jersey State League of Municipalities (Kearns, Vassallo, Guest & Kearns, Willingboro and Mason, Griffin & Pierson, attorneys; Mr. Kearns and Kristina P. Hadinger, of counsel; F. Clifford Gibbons and Christopher H. DeGrezia, Princeton, on the brief).
Before Judges HAVEY, SKILLMAN and PAUL G. LEVY. *1207
*1208 The opinion of the court was delivered by HAVEY, P.J.A.D.
This appeal presents a challenge to Morristown's garbage collection ordinance which provides free collection service to all residential dwellings of three or less units as well as condominium developments where no more than 50% of the units are owned by one person or entity. Excluded from the ordinance are all multi-family dwellings of four or more units. Therefore, plaintiff's garden apartment complex, consisting of 140 units, does not receive collection service.
Plaintiff filed a complaint in the Law Division claiming that the ordinance violates its right to due process and equal protection of the laws guaranteed by the United States and New Jersey Constitutions. It demands the same garbage collection service provided to all other residents, and also makes a claim under 42 U.S.C.A. §§ 1983 and 1988 for compensatory damages, attorneys' fees, interest and costs of suit.
The trial court granted partial summary judgment to plaintiff, concluding that there was no rational basis for the Town to have excluded apartment complexes from the coverage of the ordinance. By leave granted, a divided panel of the Appellate Division affirmed. 283 N.J.Super. 139, 661 A.2d 320 (App.Div.1995). The dissent concluded that summary judgment should not have been granted because a plenary hearing was necessary to determine whether the Town's ordinance was rationally related to a legitimate state interest. Specifically, the dissent was of the view that a remand was necessary "for the development of a record on whether the ordinance's classification is rationally related to the legitimate state interest of promoting home ownership or to any other state interest defendants may assert." 283 N.J.Super. at 169, 661 A.2d 320.
By a four to three vote, the Supreme Court reversed, essentially for the reasons expressed by the dissent in the Appellate Division, and remanded to the trial court "to conduct an evidentiary hearing and *1210 determine whether Morristown's garbage collection ordinance is rationally related to any legitimate State interest." 146 N.J. at 628, 684 A.2d 1376.
After a four-day hearing, the trial court reaffirmed its prior determination that the ordinance was unconstitutional, finding it was not rationally related to the fostering of home ownership or any other legitimate state interest. The court ordered the Town to collect garbage and recyclable materials from plaintiff's apartment complex subject to the same terms and conditions as it collects from condominium complexes. It denied plaintiff's demand for damages under § 1983 and counsel fees under § 1988.
The Town defendants now appeal from the judgment invalidating the ordinance. Plaintiff cross-appeals from the denial of its claim for damages and counsel fees. We affirm the judgment invalidating the ordinance, but we reverse the dismissal of plaintiff's claim for damages and counsel fees, and remand for further proceedings.

I
If a legislative classification "`neither burdens a fundamental right nor targets a suspect class,'" we must uphold the constitutionality of legislation "`so long as it bears a rational relation to some legitimate end.'" Vacco v. Quill, 521 U.S. 793, 799, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834, 841 (1997) (quoting Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855, 865 (1996)); see also 515 Assocs. v. Newark, 132 N.J. 180, 197, 623 A.2d 1366 (1993). Under the federal rational basis test, a classification made by legislation is presumed to be valid and will be sustained if it is "rationally related to a legitimate state interest." Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); Drew Assocs. of N.J. v. Travisano, 122 N.J. 249, 264, 584 A.2d 807 (1991). Essentially the same type of analysis has been adopted respecting evaluation of equal protection claims under Article I, paragraph 1 of the New Jersey Constitution. Property Owners & Managers Ass'n v. Parsippany-Troy Hills, 264 N.J.Super. 538, 544, 624 A.2d 1381 (App.Div.), certif. denied, 134 N.J. 561, 636 A.2d 519 (1993).
A municipal ordinance is accorded the same presumption of constitutionality as all legislation. Strauss v. Township of Holmdel, 312 N.J.Super. 610, 619, 711 A.2d 1385 (Law Div.1997) (citing Pleasure Bay Apartments v. Long Branch, 66 N.J. 79, 93-94, 328 A.2d 593 (1974)). The challenger of the ordinance must "refute all possible rational bases for the differing treatment, whether or not the Legislature cited those bases as reasons for the enactment." League of Municipalities v. State, 257 N.J.Super. 509, 518, 608 A.2d 965 (App.Div.1992), certif. dismissed, 133 N.J. 423, 627 A.2d 1132 (1993).
The parties agree that, since the Town's ordinance does not implicate a suspect class or fundamental right, the rational basis test applies. Therefore, plaintiff has the burden of demonstrating that classification by the ordinance lacks a rational basis. A municipality's exercise of its police power in classifying by ordinance, must be sustained if it can be justified on any reasonably conceivable state of facts. Taxpayers Ass'n of Weymouth Township, Inc. v. Weymouth Township, 80 N.J. 6, 40, 364 A.2d 1016 (1976). However, a governmental agency "`may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational.'" Doe v. Poritz, 142 N.J. 1, 92, 662 A.2d 367 (1995) (quoting Cleburne, supra, 473 U.S. at 446-47, 105 S.Ct. at 3258, 87 L.Ed.2d at 324). "Furthermore, some objectives ... are not legitimate state interests." Ibid.

II
A municipality is not mandated to provide for municipal garbage removal. Pleasure Bay, supra, 66 N.J. at 90, 328 A.2d 593. A municipality "may provide for the ... collection or disposal of solid waste, and may establish and operate a system therefor...." N.J.S.A. 40:66-1a *1211 (emphasis added). Also, when a municipality chooses to provide the service, it may, pursuant to its police power, impose reasonable restrictions by ordinance. Pleasure Bay, supra, 66 N.J. at 85, 328 A.2d 593. In Pleasure Bay, for example, the Court upheld municipal regulations limiting municipal service to curbside collection. Id. at 95, 328 A.2d 593; see also Property Owners, supra, 264 N.J.Super. at 543, 624 A.2d 1381 (holding that an ordinance limiting service to curbside collection "passes constitutional muster because it does not exclude any class of residents from receiving municipal solid waste collection").
However, once the service is provided by a municipality, "there can be no invidious discrimination" in limiting the service to certain classifications. Boulevard Apartments, Inc. v. Mayor of Lodi, 110 N.J.Super. 406, 411, 265 A.2d 838 (App.Div.), certif. denied, 57 N.J. 124, 270 A.2d 27 (1970). There is a violation of equal protection of the laws "unless the service is available to all persons in like circumstances upon the same terms and conditions. Persons situated alike shall be treated alike." Ibid. (citing Reid Dev. Corp. v. Parsippany-Troy Hills Township, 10 N.J. 229, 233, 89 A.2d 667 (1952)).
For example, in Boulevard, supra, we invalidated an ordinance which provided garbage collection service to single-family residents and multi-family dwellings ranging from two to eight family units, but excluded garden apartments. 110 N.J.Super. at 411, 265 A.2d 838. We found no reasonable justification for the municipality's classification, first because the garbage produced by a one-family unit in an apartment house and a one-family dwelling house is "substantially the same," id. at 412, 265 A.2d 838, and second because the cost of collection from family units in an apartment house where accumulated garbage is concentrated in one spot "is unquestionably less than the cost of collection from an equal number of family units residing in separate private dwellings." Ibid. In 399 Lincoln Assocs. v. Orange Township, 244 N.J.Super. 238, 581 A.2d 1364 (App.Div.1990), we adopted the reasoning of Boulevard in striking down an ordinance providing for garbage collection service to residential dwellings, but excluding services to "residential premises that contain five dwelling units or more," id. at 240, 581 A.2d 1364, concluding that under the ordinance "[p]ersons situated alike are not treated alike...." Id. at 245, 581 A.2d 1364.
Applying the Boulevard and 399 Lincoln Assocs. analysis here, the proofs adduced during the plenary hearing made clear that there is nothing about the mechanics or costs of solid waste collection that justifies differentiating between apartment complexes and other residents within the community. As the trial court observed during an early stage of the proceedings, "people are people," and the type and quality of solid waste generated by all types of residential dwellings is the same. In fact, the evidence demonstrated that because there are fewer residents living in individual apartment units than single-family or condominium units, apartment units generate less solid waste. Moreover, the Town's Director of Public Works conceded that it would be more cost-effective to pick up solid waste from four dumpsters serving 140 apartment units than picking up solid waste from 140 separate single-family residential units at curbside. He also acknowledged that the mechanics for collection from dumpsters is the same for apartment units and condominiums.
There is also no rational basis for differentiating between apartment units and other residential dwellings on the basis that apartment owners may realize a profit from their investment. Boulevard, supra, 110 N.J.Super. at 411, 265 A.2d 838. We observed in Boulevard:
The resolution in question makes no distinction between the owner-occupied dwellings and those rented for income. The evidence reveals that there are numerous rented multi-family dwellings containing from two to eight family units *1212 which are not precluded from receiving municipal garbage collection service. Moreover, the resolution on its face provides for collection from public housing projects and various places of business.
[Ibid.]
Here, the trial court accepted the reports of both parties' planners indicating that only 58% of the one, two and three-unit family dwellings which are provided garbage collection service are owner-occupied. Conversely, 42% of the units receiving the service are occupied by renters. The trial court found significant the more telling fact that only 27% and 11.7% of two and three-family structures respectively, are owner-occupied. The implication is that these nonoccupying owners are no less motivated by profit than owners of apartment complexes, and thus should not be treated differently. As we observed in 399 Lincoln Assocs., supra, 244 N.J.Super. at 245, 581 A.2d 1364:
A commercial landlord who rents a one, two, three or four-family building receives free garbage collection and thus does not have to factor into his rent a cost for that service, whereas, a commercial landlord with five or more units must pay for this service and thereby factor that cost into the rents charged. Persons situated alike are not treated alike under Ordinance # 5-89, and thus it is unconstitutional.

III
The Town defendants nevertheless argue that the proofs adduced during the plenary hearing support their claim that the Town's garbage collection ordinance is rationally related to fostering home ownership. They rely for the most part on our court's holding in League of Municipalities, supra, that the goal of fostering home ownership is a legitimate governmental objective. 257 N.J.Super. at 521, 608 A.2d 965. In League of Municipalities, we considered the constitutionality of the newly-adopted L. 1989, c. 299, codified as N.J.S.A. 40:67-23.2 to -23.8, the so-called Condominium Services Act. The Act mandates that municipalities provide certain municipal services or reimburse for such services condominiums, cooperatives and other private communities, but not apartment complexes.
In League of Municipalities, the Attorney General argued that there was a rational basis for the distinction made between residential communities covered by the Act and apartment complexes because such residential communities "foster the valid goal of individual home ownership." 257 N.J.Super. at 516, 608 A.2d 965. The League responded that the Act was over-inclusive and irrational if it intended to promote home ownership, since approximately 20% of the condominium owners covered by the Act rent their units to others and thus are in an identical position as apartment owners. Id. at 517-18, 608 A.2d 965.
Acknowledging that the benefit received by condominium owners who rent their property did not promote the policy of fostering home ownership, we nevertheless concluded that the statute need not be invalidated simply because it benefits some who are not members of the class the Legislature hoped to assist. Id. at 521, 608 A.2d 965. We observed that since "most condo owners do satisfy the Act's intended aim" by living in their unit, the fact that some do not share those traits "does not deprive the Act of all rational basis." Ibid.
During the plenary hearing in the present case, the Town's Mayor testified that Morristown has a policy of fostering home ownership. It was his view that "[s]trong residential neighborhoods [are] the fabric of the community." He testified that residents living in their own home have a "pride in their community," maintain their residences and have a long-term commitment to their neighborhood and the Town, whereas neighborhoods consisting of apartment dwellings tend to be in a declining condition, and house a highly "transient" population. It was his belief that the garbage collection ordinance "promote[s] the concept of ownership" because *1213 it provides a financial incentive to purchase a home within the community. He also cited the "psychological aspect" of free garbage collection. According to the Mayor, when a resident owns his or her own home, he or she "expect[s] garbage pickup," thereby providing "uniformity" which promotes "cleanliness for the neighborhood."
The Mayor and the Town's planner also referred to several provisions of the Master Plan in support of the Town's policy of fostering home ownership. For example, an objective of the Master Plan is to "preserve the single family residential character of Morristown by stabilizing existing neighborhoods and by rehabilitation of housing stock where necessary...."[1] The Master Plan observes that:
[A]n owner occupier with a substantial investment in his property has considerable interest in and commitment to the wellbeing of the surrounding neighborhood. Renters, on the other hand, are generally more transient and are generally less likely to firmly establish community ties or to be inclined to participate in community action to improve the neighborhood.
The Master Plan also provides:
Consideration should be directed at the large existing single family homes in the Town which have become uneconomical to continue as single family homes and are falling subject to the speculative dollars used in converting these facilities into other uses. It can be seen that maintaining their function as residences is beneficial to the neighborhoods that they are a part of and further to maintain their exterior facades is just as advantageous to those areas. Therefore, some mechanism should be devised to provide incentives to the owners....
The Master Plan therefore recommends that "middle-income housing be expanded" and that "single-family houses must be retained."
Plaintiff's planner testified that he found no document or study submitted by the Town or available in the planning field at large supporting the notion that free garbage collection fosters home ownership. The planner knew of no study demonstrating that people make a decision on purchasing a home based on whether or not the municipality provides free garbage collection. He also rejected the Town defendants' claim that the Master Plan supports home ownership over the creation of a rental-unit inventory, noting that the Master Plan calls for the construction of a variety of housing types for all income levels.
The trial court found that the facts did not support the Town's claim that the ordinance fostered home ownership. The court observed that as a "conceptual matter," once a municipality provides garbage collection to residential dwellings, there is no rational basis to distinguish one resident from another. It concluded:
[W]hen you start collecting from a residence it really doesn't matter whether the ... homeowner lives in a ... single-family home or in a rental apartment or in a condominium unit. I really can't see the distinction.
....
I do not think that there is any meaningful promotion of home ownership by this scheme. There is, I suppose, some broad conceptual promotion of home ownership but it is not significant. I think [plaintiff's planner] ... was right when he said the ... promotion of home ownership was ... incidental and very minimal and ... in the sense that it really wouldn't make much of a difference to whether or not people were able to own homes or motivated to own homes and if they were motivated would have the capacity to do it. And the flip side was that a lot of people who aren't homeowners do get benefited by the *1214 present scheme and ... while people who live in large residential ... rental complexes are not.
....
The conclusion I reach is that the scheme does not promote any ... legitimate State interest. It's not rationally related to any legitimate State interest. The home ownership promotion is simply a rationale.
We agree with the trial court that the plenary hearing demonstrated no basis in fact for the Town's claim that the garbage collection ordinance fosters home ownership. First, League of Municipalities is clearly distinguishable. In that case, the notion that the Condominium Services Act was rationally related to promoting home ownership was presumed; no plenary hearing was conducted, as here, to test the proposition. Moreover, the discrete issue faced by the League of Municipalities was whether the classification excluding apartment complexes was irrational because a significant number of condominium owners rent their units. According to the 1980 Census, approximately one-fifth of New Jersey condominium owners rented their units to others. 257 N.J.Super. at 517-18, 608 A.2d 965.[2] The court concluded that "we need not consider how large the deviating percentage may be before the law loses its rational basis," id. at 521, 608 A.2d 965, since "most condo owners do satisfy the Act's intended aim, in that they live in their units and in the view of the Legislature pay twice for some municipal services." Ibid.
In League of Municipalities, the "deviating percentage" was 20%. Here, as noted, the facts established that approximately 42% of the dwelling units receiving garbage collection service are not occupied by their owners. Only 27% and 11.7% of the two and three-family dwelling units are owner-occupied. If the disputed classification in fact promotes home ownership, particularly among the two and three-family owners, there is no question that the percentages of owner-occupancy would be significantly higher. The low percentages of owner-occupants necessarily indicates that the disputed classification is irrational.
Moreover, League of Municipalities, supra, 257 N.J.Super. at 515-16, 608 A.2d 965, involved the challenge to an Act which addressed the double taxation of condominium units "for some services which the residents ... now pay through property taxes and fees to their association." Statement to Senate Bill No. 2869 (1988) L. 1989 c. 299. Accordingly, the Act directs that municipalities provide services to condominiums and other qualified private communities including snow and ice removal, street lighting, collection of leaves, recyclable materials and other solid waste along the roads and streets. N.J.S.A. 40:67-23.3a. Here, the only service involved is collection of solid waste, which, according to the proofs, costs approximately $400 per residential unit per year. While this cost no doubt is not insignificant to those on the cusp of being able to afford the purchase of a home, the cost cannot be compared to the burden of double taxation sought to be relieved by the Legislature through enactment of the Condominium Services Act. The Town performed no studies or surveys indicating that people are more inclined to purchase a home if free garbage collection service is provided. No interviews of homeowners were conducted.
Moreover, we find no meaningful support in the Town's Master Plan for the proposition that a distinction, for garbage *1215 collection service purposes, should be made between homeowners and apartment dwellers. While the Master Plan recommends encouraging and maintaining residential neighborhoods, it also recommends that the Town "provide for a greater diversity of housing types to meet ... [the] needs of a wide range of incomes and age levels." The plan in fact predicts that "[m]ulti-family housing, particularly moderate density development, will constitute the major portion of new housing units in the Town." Notably, plaintiff's planner stated in his report that, from a sound planning viewpoint,
a more accurate planner's view of a varied housing stock is that it services households at different stages of the life cycle as well as different income groups. Young married couples often choose rental units as an affordable [entry] to the community. As family incomes rise and children appear, detached single-family homes become the shelter of choice. Toward the end of the cycle, senior citizens often return to rental units for reduced maintenance responsibilities and lower costs.
This trend underscores a clear countervailing policy to fostering home ownership: the provision of affordable housing to young married couples, senior citizens and other low and medium-income residents. As a constitutional and sound land use policy, its relevance here is unquestioned. See Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I); Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel II); and see Taxpayers Ass'n of Weymouth, supra, 80 N.J. at 40, 364 A.2d 1016 (ordinance restricting occupancy of mobile home park to persons fifty-two years or older rationally related to governmental objective of providing needed housing to the aging population of the State). In view of this competing policy expressed in the Master Plan, we cannot say that the plan supports disparate treatment to apartment dwellers in the provision of garbage collection service.
In short, encouraging home ownership may be a permissible and even laudable legislative objective. However, based on the evidence adduced during the plenary hearing, we conclude that the garbage collection ordinance is an example of legislation "whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." Cleburne, supra, 473 U.S. at 446, 105 S.Ct. at 3258, 87 L.Ed.2d at 324. Simply put, fostering home ownership is not a rational basis for defendants' classification scheme.

IV
The Town defendants also advance, as a rational basis for the ordinance, the fact that condominiums are taxed differently than apartment units. The Town's real estate appraiser testified that residential condominium units generally sell for a substantially larger unit value than the equivalent value of rental type units. Therefore, the assessed value, based merely on the form of ownership, can be as much as two or three times greater for a condominium. The trial court rejected this rationale, and rightly so.
The proofs established that apartment complexes provide a positive tax ratable for the municipality. They in fact absorb part of the cost of garbage collection service provided to other property owners. Moreover, apartment complexes house approximately 1.6 persons less per unit than single-family detached homes and therefore demand less municipal services. The trial court therefore concluded that there was a "strong case for the equity of [apartment units] getting whatever services are made available to single-family residences because [apartment complexes] proportionately pay more than single-family residences, although condominium complexes pay even more than do rental apartment complexes." We agree.
Further, not a single case has been cited supporting the proposition that *1216 once a town decides to provide a municipal service to condominiums, it may exclude apartment complexes simply because the assessment methodology for apartment and condominium complexes is different. The Town concedes that the cost of collecting residential garbage is a component of the Town's property tax and that apartment complexes, condominium complexes, and single-family residences are all assessed at true value for taxation purposes. See Ford Motor Co. v. Township of Edison, 127 N.J. 290, 298, 604 A.2d 580 (1992). In other words, both apartment and single-family residences and condominiums are being taxed based upon what their individual units are worth. If apartment owners are paying less taxes per unit, it is only because the units are worth less for assessment purposes. It cannot seriously be argued that just because apartment units have a lesser value for tax assessment purposes, they should be entitled to less municipal services. We conclude that the methodology of taxing apartment complexes and condominium units is not a rational basis for upholding the ordinance.

V
In its amicus brief the New Jersey State League of Municipalities argues that the Town's garbage collection ordinance is rationally related to the legitimate state interest of "efficient sanitation."
New Jersey courts have not considered whether "efficient sanitation" is a legitimate state objective. Recently, the Eleventh Circuit rejected a condominium association's claim that the City of Jacksonville's policy of collecting solid waste from residential units, but excluding condominium units, denied condominium owners equal protection. Beauclerc Lakes Condominium Ass'n v. Jacksonville, 115 F.3d 934, 935 (11th Cir.1997). The court observed that "[e]fficient sanitation is a legitimate goal; the provision of free waste collection service to residential premises consisting of four or fewer units is rationally related to achieving that goal." Ibid. The court reasoned that a legislative body could believe that condominium owners (through their representative condominium association) generally enjoy greater bargaining power with private waste removal services, and thus receive the service at a lower price. Ibid. See also Goldstein v. Chicago, 504 F.2d 989 (7th Cir.1974) (holding that since condominium associations have more effective bargaining power with private scavengers than owners of single-family units, a classification excluding condominiums from the City of Chicago's services was rational).
The "efficient sanitation" point was not argued by the Town defendants below, nor do they advance it here. It is raised for the first time on appeal by the League. Therefore, there is no record to support the League's contention that owners of apartment complexes such as plaintiff enjoy enhanced bargaining power. In any event, the contention cuts into the Town defendants' fundamental premise that a rational distinction can be made between condominiums and apartments. If apartment complexes enjoy enhanced bargaining power, so do condominium associations. Moreover, Beauclerc Lakes' holding that municipalities may exclude solid waste services to condominium complexes is in direct conflict with the Condominium Services Act, the League of Municipalities decision, and even the Town's own ordinance. Perhaps that is why the Town did not advance the point in the trial court or before us. Absent a meaningful record on the issue, we decline to address it.

VI
The Town defendants also contend that the trial court erred by failing to consider the fiscal impact to Morristown as a factor justifying its refusal to extend garbage collection service to the plaintiff and other apartment complexes.[3]
*1217 We recognize that "[municipalities] have considerable latitude in allocating their ... resources." King v. Smith, 392 U.S. 309, 318-19, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118, 1126 (1968). However, "[a]lthough preservation of fiscal integrity is a valid state interest, a [municipality] may not accomplish that goal by establishing `invidious' distinctions between citizens." Sanchez v. Department of Human Servs., 314 N.J.Super. 11, 27, 713 A.2d 1056 (App.Div.1998) (citing Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600, 614 (1969)).
A statutory classification which is "invidious" is one in which the challenged discrimination has failed to meet either the strict scrutiny or rational relationship test, and is therefore unconstitutional. 314 N.J.Super. at 29-30, 713 A.2d 1056. In the present case, the trial court determined that the Town's garbage collection scheme bore no rational relationship to any legitimate state interest. Therefore, it implicitly found that the classification created "invidious" distinctions. Ibid. An invidious classification cannot be sustained solely because it saves money. Shapiro, 394 U.S. at 633, 89 S.Ct. at 1330, 22 L.Ed.2d at 614. "The saving of [municipal] costs cannot justify an otherwise invidious classification." Ibid. Thus, the trial court correctly declined to sustain the ordinance based on the fiscal impact providing garbage collection service to apartment complexes will have.

VII
Plaintiff cross-appeals from the dismissal of its claim under § 1983 for damages and counsel fees.
Although invalidating the ordinance as being violative of equal protection of the laws, the trial court denied plaintiff's demand for damages and counsel fees under § 1983 and § 1988. The court observed that "the reality is" that the issue as to the validity of the ordinance has been a "fuzzy question" as evidenced by the difference in views expressed by the Appellate Division and the Supreme Court in their prior decisions. The trial court noted that apartment complexes historically have been treated differently than other residential units and therefore the court should not "penalize" the municipality and its taxpayers for its failure to "evolve as quickly as some of us would like to see the evolution take place." Essentially, the trial court found that plaintiff failed to establish a prima facie case for damages under § 1983 because the municipality and its officials had acted in good faith in adopting and implementing the garbage collection ordinance, and because the concern about its validity has remained unsettled. The court therefore made its determination as the invalidity of the ordinance prospective only.
We do not take issue with the trial court's ruling making its decision prospective only to the extent that it applies to all other apartment complexes in the Town, other than plaintiff's. In Borough of Neptune City v. Borough of Avon-by-the-Sea, 61 N.J. 296, 310-11, 294 A.2d 47 (1972), the Court struck down an ordinance charging higher beach fees to nonresidents than to residents of the defendant Borough, predicating its holding on the public trust doctrine. However, the Court determined that the judgment entered on its opinion should operate prospectively only, primarily because the Borough and other oceanfront municipalities had operated their budgets and financial affairs under the existing scheme. The Court observed:
To attempt now to turn the clock back to the non-discriminatory schedule (with considerably lower charges) specified in the pre-amendment ordinance would only create hopeless practical confusion and some unfairness to the municipality and its taxpayers.
[Id. at 311, 294 A.2d 47.] *1218 Citing Borough of Neptune City, we observed in Garvey v. Township of Wall, 303 N.J.Super. 93, 104, 696 A.2d 71 (App.Div. 1997):
Even when a court determines that a municipality has charged excessive or discriminatory fees to users of municipal services, it does not automatically follow that the decision should be given full retroactive effect requiring the municipality to return all the excessive fees.... [T]he scope of any monetary award depends on equitable considerations, including any delay in the initiation of proceedings to challenge the municipal action and the fiscal impact upon the municipality of a monetary award.
[Citations omitted.]
Given the potential fiscal impact upon the Town of a full retroactive effect to the trial court's decision, the equities fully support the foreclosure of any subsequent actions for damages by any other apartment owner resulting from the invalidation of the ordinance.
However, plaintiff's status must be distinguished from that of the other apartment owners. It filed its complaint in September 1992, in which it asserts a § 1983 claim. Although the Town's good faith in adopting and implementing the ordinance may justify prospective application only of the trial court's decision to other apartment owners, its good faith is not a defense to plaintiff's pending § 1983 claim for damages.
A municipality is subject to a suit under § 1983 when a constitutional injury is inflicted by the execution of local government policy or custom. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611, 638 (1978). In this case, it is alleged that the Town's garbage collection ordinance inflicted injury to plaintiff by virtue of the Town's deprivation of its right to free service. The ordinance is clearly "official policy or custom" of the Town, and therefore subjects the Town to an action under § 1983. See View Ridge Park Assocs. v. Mountlake Terrace, 67 Wash.App. 588, 839 P.2d 343, 351 (1992) (municipality may be subject to § 1983 when it acts through an ordinance), review denied, 121 Wash.2d 1016, 854 P.2d 42 (1993).
The Supreme Court of the United States has held that a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983." Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673, 685-86 (1980). The Court's conclusion in Owen was based on the fact that there was no common-law tradition of immunity for municipal corporations, and neither history nor policy supported a construction of § 1983 which would afford municipalities qualified immunity. Ibid. The Court acknowledged that there were two doctrines, rooted in the common law, which afforded municipalities some measure of protection from tort liability. First, some cases had granted municipalities immunity for their "governmental," as opposed "proprietary" functions. Second, immunity had been granted for a municipality's "discretionary" or "legislative" activities. Owen held that in enacting § 1983, Congress could not have intended that these common-law immunities applied under the Act. Id. at 644, 100 S.Ct. at 1412, 63 L.Ed.2d at 689. The Court noted:
An understanding of the rationale underlying the common-law immunity for "discretionary" functions explains why that doctrine cannot serve as the foundation for a good-faith immunity under § 1983. The common-law doctrine merely prevented courts from substituting their own judgment on matters within the lawful discretion of the municipality. But a municipality has no "discretion" to violate the Federal Constitution; its dictates are absolute and imperative. And when a court passes judgment on the municipality's conduct in a § 1983 action, it does not seek to second-guess the "reasonableness" of the city's decision nor to interfere with the local government's resolution of *1219 competing policy considerations. Rather, it looks only to whether the municipality has conformed to the requirements of the Federal Constitution and statutes.
[Id. at 649, 100 S.Ct. at 1414-15, 63 L.Ed.2d at 692.]
In Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517, 523 (1993), the Court reaffirmed the Owen holding that municipalities are not entitled to immunity from suits brought under § 1983. The Court held that "unlike various municipal officials, municipalities do no enjoy immunity from suiteither absolute or qualifiedunder § 1983." Ibid. See also Carver v. Foerster, 102 F.3d 96, 103 (1996) (same).
Our holding is narrow. The municipality's good faith in enacting and enforcing the garbage collection ordinance is not a defense to plaintiff's damage claim under § 1983. That is not to say, however, that there may not be other equitable or legal grounds, or policy considerations, recognized by law, justifying the denial of damages in this case. The Town has not asserted those grounds before the trial court or before us, and any issues supporting such contentions have not been briefed.
Further, any claim by plaintiff for damages is entirely unclear. A prevailing plaintiff in a § 1983 action may recover compensatory damages from the municipality. Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616, 634-35 (1981). § 1983 creates a "species of tort liability in favor of persons who are deprived the rights, privileges or immunities secured to them by the constitution." Carey v. Piphus, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252, 258 (1978) (quoting Imbler v. Pachtman, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128, 136 (1976)). Where a plaintiff seeks damages under § 1983 for violations of constitutional rights, damages are ordinarily determined according to the principles derived from the common law of torts. Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306, 106 S.Ct. 2537, 2542, 91 L.Ed.2d 249, 258 (1986).
Plaintiff's complaint seeks compensatory damages "measured by the costs incurred by the plaintiff for providing a service that should have been provided by the defendants." This means that it seeks to recover the cost of garbage collection since 1991, when it was denied the service by the Town. However, plaintiff acknowledged before us that at least a portion of the cost of garbage collection has historically been passed on to the tenants. If in fact the tenants have borne the cost, plaintiff should have no damage claim.
It should also be noted, for purposes of remand, that the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C.A. § 1988, prescribes that in a section 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." "Although the award of fees is discretionary, it was clearly the intent of Congress in passing section 1988 that fees be awarded as a matter of course." Gregg v. Township Committee, 232 N.J.Super. 34, 37, 556 A.2d 348 (App.Div.1989). Fees are to be denied only in those cases where special circumstances would make such an award unjust. Carlstadt Educ. Ass'n v. Mayor & Council of Carlstadt, 219 N.J.Super. 164, 167, 530 A.2d 34 (App.Div.1987). Fees are the rule, rather than the exception, and the special circumstances exception should be applied only in unusual cases. Gregg, supra, 232 N.J.Super. at 38, 556 A.2d 348. Accordingly, "a trial judge's discretion in denying a fee is quite limited." Ibid. (citing M. Schwartz and J. Kirklin, Section 1983 Litigation: Claims, Defenses and Fees, §§ 16.1-16.2 (1986)). See Aware Woman Clinic, Inc. v. Cocoa Beach, 629 F.2d 1146, 1149-50 (5th Cir.1980) (holding that the fiscal impact on the defendant city is not a legitimate factor justifying denial of counsel fees). Here, the trial court did not consider whether "special circumstances" *1220 are present in denying plaintiff's demand for counsel fees.
We therefore reinstate plaintiff's § 1983 claim and remand to the trial court for a determination whether plaintiff has a viable claim for damages and counsel fees under §§ 1983 and 1988 after consideration of any defenses the Town may raise.
Affirmed in part; reversed and remanded in part.
NOTES
[1] According to the 1990 Census of Housing figures, Morristown had a total of 7,061 housing units. Of those, 2,430 or approximately 34% were single-family residences, and 3,528 or approximately 50% were units of three or more families.
[2] League of Municipalities did not address the issue before us: whether the failure to make a specific municipal service equally available to all persons in like circumstances denied equal protection of the law. Judge Skillman, in his concurring opinion, recognized that this issue had not been addressed by the majority, and thus should be preserved. He also suggested that passage of the Condominium Services Act "may strengthen an apartment owner's claim of constitutional entitlement to those services, due to the similarities between qualified private communities and apartment complexes with respect to physical lay-out and other conditions." 257 N.J.Super. at 523, 608 A.2d 965.
[3] The Town's Director of Public Works testified that it would cost the Town at least $412,000 to provide garbage collection service to apartments in the municipality. In his report to the court, the Director indicated that a new garbage truck, new recycling truck and several roll-off containers for recyclables would have to be purchased.