PERRY, J.,
concurring in part and dissenting in part.
The certified question of great public importance in this case is whether “the limitation in section 766.31(l)(b)l., Florida Statutes, of a single award of $100,000 to both parents violate[s] the Equal Protection Clause of the United States and Florida Constitutions?” Samples v. Florida Birth-Related Neurological, 40 So.3d 18, 31 (Fla. 5th DCA 2010). I concur with the majority’s holding . that section 766.31(l)(b)l., Florida Statutes (2010) (the “parental award provision”[1]), unambiguously provides for only a single award of $100,000. However, I dissent from the majority’s holding that the parental award provision does not violate equal protection and would answer the certified question in the affirmative. As such, I would find it to be both unnecessary and outside the realm of the certified question to address the parties’ alternative constitutional argu *922 ments regarding vagueness and access to courts.
In applying the rational basis test, the majority in its equal protection analysis appears to implicitly acknowledge that the parental award provision treats similarly situated parents differently. But it reasons that “[l]imiting the parental award to $100,000 per claim — as opposed to per parent — is rationally related to maintaining the actuarial soundness of the [Florida Birth-Related Neurological Injury Compensation Plan (the Plan) ].” Majority op. at 917. I disagree upon finding that the distinction between parents pursuing a claim individually versus jointly is imper-missibly invidious for equal protection purposes, and that the parental award provision is intended to compensate parents individually for noneconomic damages.
INVIDIOUS DISTINCTION
The United States Supreme Court has recognized that, although a state has “a valid interest in preserving the fiscal integrity of its programs,” and thus “may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program,” it “may not accomplish such a purpose by invidious distinctions between classes of its citizens.” Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (holding that statutory prohibition of welfare benefits to state or District of Columbia residents of less than one year violated equal protection), overruled on other grounds by Edelman v. Jordan, 415 U.S. 651, 670-71, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
Although Shapiro dealt with a fundamental right and therefore applied the strict scrutiny test, the Supreme Court noted that the classification at issue would look to fail even the “traditional test” of rational basis review. Id. at 638, 638 n. 20, 89 S.Ct. 1322; see also Newton v. McCotter Motors, Inc., 475 So.2d 230, 234 n. 2 (Fla.1985) (Erlich, J., dissenting) (noting that, in Shapiro, “[t]he Supreme Court rejected] cost-savings alone as a justification for a classification,” even under rational basis review); WHS Realty Co. v. Town of Morristown, 323 N.J.Super. 553, 733 A.2d 1206, 1217 (Ct.App.Div.1999) (affirming trial court’s determination that town’s garbage collection scheme excluding multifamily dwellings of four or more units from free service “bore no rational relationship to any legitimate state interest”; citing Shapiro for the proposition that “[t]he savings of [municipal] costs cannot justify an otherwise invidious classification”).
The majority cites several cases for the proposition that “the actuarial soundness of state programs has been upheld as a legitimate state interest by several courts faced with equal protection claims.” Majority op. at 917. The only Florida case cited by the majority in this context is Loxahatchee River Environmental Control District v. School Board of Palm Beach County, 496 So.2d 930 (Fla. 4th DCA 1986), a significantly distinguishable district court of appeal decision that is in no way binding on this Court.
The statute at issue in Loxahatchee exempted school board construction from impact fees imposed by publicly owned utility providers but not those imposed by privately owned utility companies. Id. at 937. A publicly owned utility argued that the Legislature had thereby made a discriminatory classification that violated due process. Id. In rejecting this claim, the Fourth District Court of Appeal reasoned on the one hand that “[i]f publicly owned utilities are not perceived as sharing a class with privately owned ones, then there is no equal protection issue” because, under the subject statute, “publicly owned utilities are affected by the exemption in *923 the same way.” Id. at 938. In contrast to “publicly owned utilities” being affected in the same way under the statute in Loxa-hatchee, “parents” are affected differently under the parental award provision in the present case depending upon whether they pursue a claim singly versus jointly.
The Fourth District in Loxahatchee reasoned on the other hand that,
[t]o the extent that publicly owned utilities are naturally in the same class as privately owned ones, but have been separately classified here for the purpose of the impact fee exemption, the legislature may have reasoned that although privately owned utilities frequently perform the same services as publicly owned ones, the former are franchised, and serve areas different from those served by the publicly owned ones. There is thus no competition between publicly owned and private utilities; hence no competitive advantage is given the private utilities by the fact they may collect impact fees from new public schools whereas the publicly owned utilities may not.
496 So.2d at 938. Again in contrast, parents pursuing a claim individually under the parental award provision at issue in the present case enjoy a distinct advantage over those proceeding jointly — namely, up to twice the award amount. I would therefore find Loxahatchee to be significantly distinguishable and conclude that the distinction at issue in the present case is impermissibly invidious for equal protection purposes.
NONECONOMIC DAMAGES
That the distinction at issue in the present case violates equal protection is further supported by our decision in St. Mary’s Hospital, Inc. v. Phillipe, 769 So.2d 961 (Fla.2000), in which we considered the strikingly similar issue of whether the $250,000 noneconomic damages cap in the arbitration provisions of the Medical Malpractice Act (the Act) limited the aggregate recovery of all claimants versus the individual recovery of each claimant. This Court concluded that “interpreting] the noneconomic damages cap [in the Act] to apply to all claimants in the aggregate ... would create equal protection concerns.” Id. at 971.
The majority distinguishes the present case as involving not the Act, but rather the Plan, which it says in contrast “sets the parental award provision apart from the statutory limitation on fault-based damages at issue in St. Mary’s Hospital.” Majority op. at 919. I disagree as to the Plan’s parental award provision, which I find to the contrary must be intended to compensate for noneconomic damages suffered by individual parents.
Section 766.31(1), Florida Statutes (2010), provides in pertinent part:
Upon determining that an infant has sustained a birth-related neurological injury and that obstetrical services were delivered by a participating physician at the birth, the administrative law judge shall make an award providing compensation for the following items relative to such injury:
(a) Actual expenses for medically necessary and reasonable medical and hospital, habilitative and training, family residential or custodial care, professional, residential, and custodial care and service, for medically necessary drugs, special equipment, and facilities, and for related travel.
[[Image here]]
(b)l. Periodic payments of an award to the parents or legal guardians of the infant found to have sustained a birth-related neurological injury, which award shall not exceed $100,000. However, at the discretion of the administrative law *924 judge, such award may be made in a lump sum.
2. Death benefit for the infant in an amount of $10,000.
(c) Reasonable expenses incurred in connection with the filing of a claim under [the Plan], including reasonable attorney’s fees, which shall be subject to the approval and award of the administrative law judge.
Significantly, subsections 766.31 (l)(a) and (c) contemplate specific expenses related to caring for an injured child and pursuing a claim under the Plan, while subsection 766.31(l)(b)l. (the parental award provision directly at issue) is set apart from those subdivisions and contains no such specificity. See generally Kelso v. State, 961 So.2d 277, 282 (Fla.2007) (giving “independent meaning and effect to the words and structure selected” in construing statute). Moreover, section 766.314(9)(a), Florida Statutes (2010), provides that
[w]ithin 60 days after a claim is filed, the [Florida Birth-Related Neurological Injury Compensation Association (NICA) ] shall estimate the present value of the total cost of the claim, including the estimated amount to be paid to the claimant, the claimant’s attorney, the attorney’s fees of [NICA] incident to the claim, and any other expenses that are reasonably anticipated to be incurred by [NICA] in connection with the adjudication and payment of the claim. For purposes of this estimate, [NICA] should include the maximum benefits for noneconomic damages.
The Samples argue, and I agree, that the parental award provision is the only element of compensation under the Plan that could reasonably be referred to as “non-economic damages” under section 766.314(9)(a). See generally St. Mary’s Hosp., 769 So.2d at 967 (recognizing the “cardinal rule of statutory construction that a statute must be construed in its entirety and as a whole”). NICA does not offer an alternative, and I do not otherwise find one in the NICA statutes.
I accordingly disagree with the majority’s implication that our analysis in St. Mary’s Hospital is inapplicable. See Majority op. at 919-20. I would hold to the contrary that it is applicable and supports finding an equal protection violation in this case.
CONCLUSION
The majority’s equal protection holding is based in large part upon finding Loxa-hatchee applicable and St. Mary’s Hospital inapplicable to the present case. I would find just the opposite. Based on this and the other reasons expressed above, while I concur with the majority’s holding that the parental award provision unambiguously provides for only a single award of $100,000, I respectfully dissent from its holding that the provision does not violate equal protection. I would therefore answer the certified question in the affirmative and refrain from addressing the parties’ alternative constitutional arguments regarding vagueness and access to courts.
PARIENTE and QUINCE, JJ., concur.

. My use of the terms "parental award provision” and "parent(s)” throughout this opinion includes legal guardians as contemplated under the statute.